## In re ADOPTION OF PESHEK.

[Cite as *In re Adoption of Peshek* (2001), 143 Ohio App.3d 839.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 2001–CA–2.

Decided June 1, 2001.

*John C.A. Juergens,* for appellant Bruce Peshek.

*Terry R. Hart,* for appellee Roy Randall.

FAIN, Judge.

Petitioner-appellant Bruce Peshek appeals from the denial of his petition to adopt his stepdaughter, Alaina Randall. Peshek argues that the trial court erred

by finding that his wife's mere presentation of a Christmas card to Alaina, sent to her by her natural father, respondent-appellee Roy Randall, was sufficient to constitute a communication between Randall and Alaina, pursuant to R.C. 3107.07(A), and thereby preclude a finding that Randall had failed, without justifiable cause, to communicate with his child for a period of one year immediately preceding the filing of Peshek's petition to adopt Alaina. Peshek points out that according to his wife's testimony, Alaina refused to accept Randall's card, and argues that, therefore, there was no successful communication between Randall and Alaina. Consequently, Peshek asserts that the trial court erred in finding that Randall's consent to the adoption, which Randall refused, was necessary.

We conclude that, pursuant to the Ohio Supreme Court's decision in *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613, Mrs. Peshek's presentation of the Christmas card to Alaina, which was sent to her by Randall in the year preceding Mr. Peshek's filing of his adoption petition, was sufficient to preclude a finding that Randall had failed, without justifiable cause, to communicate with his daughter for the requisite one-year period; therefore, Randall's consent to the adoption, which he refused, was necessary. Accordingly, the judgment of the trial court is affirmed.

## I

Roy and Tricia Randall were married in June 1992. On October 6, 1993, the couple had a daughter, Alaina. The Randalls divorced in January 1995. Tricia was granted custody of Alaina, and Roy was granted supervised visitation with her. Roy's visitation with Alaina was to occur at the home of Tricia's parents, Dan and Joyce Gerhardt.

Tricia married Bruce Peshek in January 1997. On or about September 21, 2000, Mr. Peshek filed a petition in the Champaign County Probate Court seeking to adopt Alaina. Peshek alleged in his petition that Randall's consent was not required because he had failed without justifiable cause to communicate with Alaina for a period of at least one year immediately preceding the filing of the adoption petition.

A hearing was held on Mr. Peshek's petition on December 8, 2000. Mr. Peshek testified that the last time Randall visited with Alaina was on August 21, 1999. Mr. Gerhardt testified that Alaina had received one card from Randall around Christmas-time, 1999. Gerhardt testified that he gave the card to Mr. Peshek, who, in turn, testified that he gave it to Alaina, who then opened it.

Mrs. Peshek testified that Randall had not visited nor otherwise communicated with Alaina for the one-year period preceding the filing of Mr. Peshek's petition.

Mrs. Peshek acknowledged that Randall had sent Alaina one Christmas card during the one-year period. However, Mrs. Peshek testified that Mr. Peshek gave the card to her and that they told Alaina that a card had arrived from her father. According to Mrs. Peshek, Alaina asked them if the card said that Randall wanted to see her; when they told her it did not, she told them she did not want to see it. When asked if she ever gave the card to Alaina, Mrs. Peshek replied, "No I did not force her [to take it]."

Randall testified that he last visited Alaina at her maternal grandparents' house either on September 20, 1999, or September 25, 1999, "[s]omewhere in there[.]" Randall further testified that in addition to sending Alaina a Christmas card in the one-year period preceding the filing of the petition, he also sent her cards for her birthday, Valentine's Day, and Easter. Randall's testimony also indicated that Mrs. Peshek and her parents had significantly interfered with and discouraged communication between him and Alaina.

On December 18, 2000, the probate court issued an entry dismissing Mr. Peshek's petition, based upon its finding that, pursuant to *In re Adoption of Holcomb* (1985) 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613, Mrs. Peshek's presentation of the Christmas card to Alaina constituted a communication between Randall and Alaina, notwithstanding Alaina's refusal to accept it, and, therefore, Randall's consent to the adoption was required. The trial court stated that it disagreed with the rule set forth in *Holcomb*, but, nevertheless, felt constrained to follow it.

Mr. Peshek appeals from the probate court's December 18 entry.

## II

Mr. Peshek has raised two assignments of error:

"I. The court erred in finding that the sending of a Christmas card by Mr. Randall to his daughter constituted communication as defined in R.C. [Section] 3107.06 [*sic*, apparently referring to 3107.07].

"II. The court erred in denying the petition for adoption."

Mr. Peshek argues that the trial court erred in finding that Mrs. Peshek's presentation of the Christmas card to Alaina, which was sent to her by Randall, and which Alaina refused to accept, constituted a "communication" for purposes of R.C. 3107.07. Mr. Peshek contends that because his wife's testimony showed that Alaina never received or looked at the card sent to her by Randall, no communication occurred, and, therefore, the trial court erred by ruling that Randall's consent to the adoption was necessary.

█ Pursuant to R.C. 3107.07(A), a person who seeks to adopt a child without the consent of one of its parents has the burden of proving by clear and convincing evidence that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner. *Holcomb, supra.* Everyone agrees that Randall did not fail to provide support for Alaina during the requisite one-year period; therefore, the only issue in this case is whether he failed to communicate with her during that period.

█ Since R.C. 3107.07(A) does not define the verb "to communicate," it must be given its ordinary and accepted meaning. *In re Adoption of Jordan* (1991), 72 Ohio App.3d 638, 644, 595 N.E.2d 963, 967, citing R.C. 1.42 and *Smith v. Ray* (1948), 149 Ohio St. 394, 398, 37 O.O. 89, 91, 79 N.E.2d 116, 118. The word "communicate" has been defined as " 'to make known,' 'to inform a person of, convey the knowledge or information of * * * to send information or messages * * *.' " *Jordan, supra,* at 644, 595 N.E.2d at 967, quoting Webster's Third New International Dictionary (1986) 460.

█ Here, we agree with the trial court's finding that Mrs. Peshek's mere presentation of the Christmas card to Alaina constituted a communication for purposes of R.C. 3107.07(A). By sending the Christmas card to Alaina, and by Mrs. Peshek's presenting the card to her, Randall sent Alaina a message, which constitutes a "communication" under the ordinary and accepted meaning of that term.

█ In support of his argument that Randall's sending of the Christmas card should not be considered sufficient to constitute a communication, Mr. Peshek cites the concurring opinion of Justice Douglas in *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, wherein Justice Douglas indicated that a parent's making one payment of support or sending a Christmas card during the requisite one-year period should not be considered sufficient to require his consent for an adoption. *Id.* at 107, 515 N.E.2d at 924–925. However, Justice Douglas's concurring opinion in *Bovett* is not controlling. No matter how sympathetic we may be with Justice Douglas's position, the question presented here is governed by the majority opinion in *Holcomb, supra.*

In determining the General Assembly's intended meaning of the verb "to communicate" as used in R.C. 3107.07(A), the *Holcomb* court stated as follows:

"Our reading of the statute indicates that the legislature intended to adopt an objective test for analyzing failure of communication ' * * * against which probate courts might measure the degree to which a parent must have voluntarily

abandoned his parental responsibility as a condition precedent to his having forfeited his parental rights.' [Citation omitted.] The legislature purposely avoided the confusion which would necessarily arise from the subjective analysis and application of terms such as failure to communicate meaningfully, substantially, significantly, or regularly. [Citation omitted.] Instead, the legislature opted for certainty. It is not our function to add to this clear legislative language. Rather, we are properly obliged to strictly construe this language to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights. [Citations omitted.] *In light of these considerations, we believe that, pursuant to the explicit language of R.C. 3107.07(A), failure by a parent to communicate with his or her child is sufficient to authorize adoption without that parent's consent only if there is a complete absence of communication for the statutorily defined one-year period.*" (Emphasis added.) *Id.* at 366–367, 18 OBR at 423–424, 481 N.E.2d at 619.

The foregoing language in *Holcomb, supra,* does not allow for the exception for a *de minimis* communication urged by Justice Douglas in his concurrence in *Bovett, supra.* Instead, a *complete absence* of communication is required, and reviewing courts are not to assess whether the communication that did occur was meaningful, substantial, significant, or regular. Indeed, the *Holcomb* court considered the potential mischief that its holding might create, but rationalized those consequences in the following manner:

"This conclusion [requiring that there be a complete absence of communication between a parent and child for the requisite one-year period in order to dispense with that parent's consent to the child's adoption by another] in no way condones the actions of the uncaring, unworthy, or unscrupulous parent who, after a period of sustained absence, makes an infrequent communication for the sole purpose of frustrating or preventing adoption. Rather, this determination pays due deference to the legislature's intended protection of the fundamental liberty interest of natural parents in the care, custody and management of their children." *Holcomb, supra,* at 367, 18 OBR at 424, 481 N.E.2d at 619, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–1395, 71 L.Ed.2d 599, 606.

While we recognize that a person who seeks to adopt a child without the consent of one of the child's natural parents should be required to meet a high standard in showing that the natural parent has voluntarily abdicated his or her parental relationship through failure to communicate with the child, we are nevertheless of the view that the *Holcomb* court's construction of the term "to communicate," as used in R.C. 3107.07(A), is too strict. For instance, in *In re Adoption of Hudnell* (1996), 113 Ohio App.3d 296, 680 N.E.2d 1055, the court held that the natural father's meeting with his son on Christmas day, which the trial court had termed "accidental," was sufficient to preclude a finding that the

natural father had unjustifiably failed to communicate with the child. Judge Harsha concurred in the judgment only, stating:

"I believe that the Supreme Court [in *Holcomb*] overlooked the controlling rule of statutory construction that the legislative edicts should not be construed in a manner that obtains unjust and unreasonable results. R.C. 1.47(C). The fact that a parent can require consent to an adoption by an accidental contact with a child during which the parent states that the child is a 'little son of a bitch' is an unjust and unreasonable result.

"Nonetheless, I am constrained by the Ohio Constitution to join my colleagues in following the syllabus of *Holcomb*."[1] *Hudnell, supra,* at 304–305, 680 N.E.2d at 1060.

■ Were it not for *Holcomb*, we would hold that a natural parent's sending of one Christmas card during the one-year period immediately preceding the filing of an adoption petition constituted a *de minimis* communication that was insufficient to preclude a finding that the natural father had unjustifiably failed to communicate with his child. We would then remand this case to the probate court with instructions for it to determine (1) whether Randall's testimony that he had more contacts with Alaina than just sending her the Christmas card was credible, and (2) whether Mrs. Peshek or her parents significantly interfered with or discouraged communications between Randall and Alaina, as Randall asserted in his testimony. However, because *Holcomb* remains the controlling law on the question in dispute here, we are constrained to uphold the trial court's judgment.

Both of Mr. Peshek's assignments of error are overruled.

### III

Both of Mr. Peshek's assignments of error having been overruled, we affirm the judgment of the trial court.

*Judgment affirmed.*

BROGAN and GRADY, JJ., concur.

---

**1.** Paragraph two of the syllabus in *Holcomb* contains the "complete absence of communication" rule discussed above.