DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court, Probate Division, judgment finding that the consent of Ryan Shankles, appellant herein, was not needed for the adoption of his son, Tanner Warren Cutright (d.o.b. 12-22-99), by James K. Cutright, petitioner below and appellee herein.
 {¶ 2} The following errors are assigned for our review:
FIST ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT, RYAN SHANKLES, FAILED WITHOUT JUSTIFIABLE CAUSE TO COMMUNICATE WITH HIS MINOR CHILD DURING THE ONE YEAR PERIOD PRIOR TO FILING OF THE PETITION FOR ADOPTION."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT'S FINDING THAT APPELLANT, RYAN SHANKLES, FAILED WITHOUT JUSTIFIABLE CAUSE TO COMMUNICATE WITH HIS MINOR CHILD DURING THE ONE YEAR PERIOD PRIOR TO THE FILING OF THE PETITION FOR ADOPTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} A brief summary of the facts pertinent to this appeal is as follows. Appellant met Kathryn Burdette (n/k/a Kathryn Cutright) in 1999 when they worked at the "Dana Point Chart House" in California. They began dating and Kathryn became pregnant several months later. Because of difficulties in the pregnancy, Kathryn returned to Ohio in May of 1999. Tanner Warren Burdette (a/k/a Tanner Warren Cutright) was born December 22, 1999. Appellant came to Ohio to see Kathryn and Tanner in February, 2000, and Kathryn took Tanner to California the following June to visit appellant and his family. About the same time, Kathryn met and began dating appellee. They became engaged the following year and were married October 6, 2001.
 {¶ 4} For one reason or another, appellant was never in the physical presence of his son during 2001. Plans were made for appellant to meet Kathryn and Tanner in Ohio and bring them to Michigan for appellant's sister's wedding, but Kathryn cancelled shortly before the event. Kathryn told appellant that she had an "emergency" wedding to attend in Boston and that she could not come to Michigan.[1] Appellant became worried about this and several other incidents of what he considered to be obstructed visitation. He subsequently contacted an attorney in Chillicothe and, in December of 2001, initiated legal proceedings to enforce visitation.
 {¶ 5} Less than two weeks later, appellee initiated the instant proceedings to adopt his stepson. Kathryn Cutright consented to the adoption and appellee alleged that the father's (appellant's) consent was not necessary because appellant "failed without justifiable cause to communicate with the minor child for a period of ate least one year immediately proceeding the filing of the adoption petition."
 {¶ 6} The matter came on for hearing on December 9, 2002. It is uncontroverted that appellant did not have physical contact with his son between December 20, 2000, and December 20, 2001. Appellant and his family had purchased and forwarded birthday and Christmas presents to Tanner, Kathryn and the Burdette family, but those packages arrived in early December of 2000 and on December 20, 2001.[2] In other words, Tanner received no presents from appellant during the 365 day period immediately proceeding the filing of the petition. While Kathryn and appellant had sporadic phone and e-mail contact during that time, it was unclear whether appellant had any contact with Tanner.[3] Appellant testified that on occasion, he would speak with Kathryn who would then put Tanner on the phone so that he could "hear him say words." Kathryn, however, testified that no phone conversations occurred between appellant and Tanner during the relevant one year period.
 {¶ 7} On December 31, 2002, the trial court issued a decision in favor of appellee. The court determined (1) that the gifts were not given to the minor "within the statutory period" for requiring appellant's consent to the adoption; (2) that nothing established that the gifts were presented to Tanner with an indication that they were from his father; and (3) that Tanner's background "babbling" during phone conversations between his parents did not constitute "communication." In determining whether the failure to communicate was justifiable, the court found that no evidence established that Kathryn significantly interfered with or discouraged communication between father and son. Thus, the adoption could proceed without appellant's consent. This appeal followed.[4]
 {¶ 8} We jointly consider appellant's assignments of error as they raise similar arguments concerning the trial court's judgment that his consent was not necessary for Tanner's adoption. Our analysis begins from the basic premise that parents have a fundamental liberty interest in the care, custody and management of their children. Troxel v. Granville
(2000), 530 U.S. 57, ___, 147 L.Ed.2d 49, 56, 120 S.Ct. 2054, 2060;Santosky v. Kramer (1982), 455 U.S. 745, 753, 71 L.Ed.2d 599, 606,102 S.Ct. 1388, 1394-1395. The right to raise one's child is an essential and basic civil right in this country. In re Hays (1997), 79 Ohio St.3d 46,48, 679 N.E.2d 680, 682-683; In re Murray (1990), 52 Ohio St.3d 155,157, 556 N.E.2d 1169, 1171. Adoption, obviously, terminates that right.In re Adoption of Greer (1994), 70 Ohio St.3d 293, 298, 638 N.E.2d 999,1003; also see R.C. 3107.15(A)(1). Therefore, unless a specific statutory exemption applies, children cannot be adopted without the consent of their natural parents. See McGinty v. Jewish Children's Bur. (1989),46 Ohio St.3d 159, 161, 545 N.E.2d 1272, 1274; also see R.C. 3107.06(A). One such exception to that rule is set forth in R.C. 3107.07(A) which provides:
"A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."[5]
 {¶ 9} The party seeking to adopt a child without parental consent has the burden of proving, by clear and convincing evidence, both that (1) that the natural parent failed to support or communicate with the child for the requisite one-year time period, and (2) that the failure was without justifiable cause. In re Adoption of Bovett (1987),33 Ohio St.3d 102, 515 N.E.2d 919, at paragraph one of the syllabus; Inre Adoption of Masa (1986), 23 Ohio St.3d 163, 492 N.E.2d 140, at paragraph one of the syllabus. A finding that parental consent is not necessary for an adoption will not be disturbed on appeal unless it is against the manifest weight of the evidence. See Bovett, supra at paragraph four of the syllabus; Masa, supra at paragraph two of the syllabus. In other words, if the trial court's finding is supported by some competent credible evidence, it will not be reversed on appeal by a reviewing court. See Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7, 10,722 N.E.2d 1018, 1022; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96,566 N.E.2d 154, 159; C.E. Morris Co. V. Foley Construction Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus.
 {¶ 10} We agree with the trial court's conclusion that the evidence adduced below established a lack of communication between appellant and his son during the 365 day period immediately prior to the filing of the adoption petition. Appellant conceded during the trial court proceeding that he was not in Tanner's physical presence from December 20, 2000, to December 20, 2001. If any communication occurred between them, it must have occurred through some other means.
 {¶ 11} It is well-settled that sending gifts and cards constitutes communication for purposes of R.C. 3107.07(A). See e.g. In re Adoption ofPeshek (2001), 143 Ohio App.3d 839, 841, 759 N.E.2d 411; In re Adoptionof Hupp (1982), 9 Ohio App.3d 128, 130-131, 458 N.E.2d 878; In re Wells
(Sep. 25, 2001), Belmont App. No. 00BA49. Appellant did not send any cards to Tanner although this is not too significant given that Tanner was not even two (2) years old until after December 20, 2001. The evidence was uncontroverted that appellant and his family sent birthday and Christmas gifts to Tanner. Because those two events are so close together, however, appellant sent the gifts together in one package. The evidence revealed that the gifts in 2000 were received the first week in December and the gifts in 2001 were received on December 20th. Thus, a gap of more than 365 days occurred between the receipt of the gifts.
 {¶ 12} We also agree with the trial court that Tanner's "babbling," while appellant and Kathryn spoke on the telephone, does not amount to communication. Although the verb "communicate" is not defined in R.C. Chapter 3107, courts have generally taken it to mean (in the context of adoption) "to make known, to convey knowledge and/or information, to send information or messages." See generally Peshek, supra at 843; In re Adoption of Jordan (1991), 72 Ohio App.3d 638, 644,595 N.E.2d 963. The essence of communication is the passing of a thought from the mind of one person to another. Jordan, supra at 644; In reAdoption of Hedrick (1996), 110 Ohio App.3d 622, 626, 674 N.E.2d 1256. A message that is not received or otherwise successfully passed on to the mind of another is not communicated. Hedrick, supra at 626. We cannot realistically expect that this exchange passed information between appellant and Tanner when neither father nor son were capable of understanding the other.[6] Thus, in light of no other evidence of contact between appellant and Tanner, we conclude that sufficient competent and credible evidence exists to support the trial court's conclusion that appellant failed to communicate with his son for the one year period prior to the filing of the adoption petition.
 {¶ 13} We now turn to the trial court's finding that no justifiable cause existed for the failure to communicate. Because this issue involves differing burdens, the applicable evidentiary standards should be reviewed. As we stated previously, appellee had the burden of proving, by clear and convincing evidence, that no justifiable cause existed for appellant's failure to communicate with Tanner. Bovett, supra, at paragraph one of the syllabus; Masa, supra, at paragraph one of the syllabus. Once appellee established, by clear and convincing evidence, that appellant failed to communicate with Tanner for the requisite one year period, the burden of going forward with evidence shifted to appellant to show a facially justifiable cause for that failure. Bovett, supra, at paragraph two of the syllabus.[7] The overall burden of proof, however, remained with appellee. Id. No burden can be placed appellant to prove that his failure to communicate was justifiable. In re Adoption of Gibson (1986), 23 Ohio St.3d 170, 172,492 N.E.2d 146; In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368, 481 N.E.2d 613.
 {¶ 14} Appellee established that appellant failed to communicate with Tanner for a one year period prior to the filing of the adoption petition. The burden of going forward then fell to appellant to show a facially justifiable cause for that failure. After our review of the evidence, we believe he met his burden. The evidence adduced during the trial court proceeding reveals the following reasons for the lack of communication between father and son: (1) appellant lives in California, his son lives in Ohio and the two of them are separated by thousands of miles; (2) Tanner was only eleven to twenty-two months old during the one year period at issue in this case thus restricting the type of communication they could have; (3) appellant was supposed to meet Tanner and Kathryn in 2001 and drive to his sister's wedding, but Kathryn cancelled shortly before then with a fabricated story of another wedding; (4) appellant and Kathryn talked about her and Tanner coming to California that year, but the trip never materialized.[8] All this, particularly the two failed trips in 2001, constitutes sufficient evidence of a facially justifiable reason for a failure to communicate so that appellee was required to carry the full burden of proving that no justifiable cause exists. We are not persuaded that appellee met that burden by clear and convincing evidence.
 {¶ 15} Kathryn admitted at the hearing that she cancelled the planned meeting between appellant and Tanner with a fabricated story about another wedding. Whether or not her reasons were legitimate[9], and her motives innocent[10], the fact remains that the one opportunity that appellant had planned to see his son in 2001 (and that Kathryn initially agreed to the visit) was thwarted by Kathryn's decision. Kathryn testified that she was open to appellant coming to Ross County any other time that year to see Tanner. Appellant related, however, that he had difficulties getting that much vacation time in addition to the vacation time he used for the wedding. We again emphasize that this was not a matter of traveling across a town or even across a state. Rather, appellant had to travel thousands of miles from California. Furthermore, if Kathryn did not want Tanner to attend the wedding, she could have at least given appellant an accurate view of the situation and her feelings. Appellant may well have traveled from Columbus (where his plane landed) to Chillicothe to visit his son. However, by informing appellant that Tanner would be out of state at that time, Kathryn deprived appellant of this opportunity.
 {¶ 16} We acknowledge that significant interference by a custodial parent with communications between the non-custodial parent and the child is required to establish justifiable cause for failure to communicate. See Holcomb, supra, at paragraph three of the syllabus. Given the particular facts and circumstances of this case, we believe that appellant satisfied his initial burden of showing significant interference and that appellee was unable to carry his burden of rebutting that evidence and demonstrating the absence of justifiable cause for failure to communicate with Tanner. Thus, R.C. 3107.07(A) does not apply and appellant's consent was necessary for the adoption.
 {¶ 17} We believe that our ruling is buttressed by sound public policy. Adoption results in the permanent severance of the parental relation. Thus, the statute should be strictly construed in favor of the rights of natural parents. See 2 Merrick-Rippner, Probate Law (2001), 725, § 98.39; 3 Ohio Family Law Practice (1994) 644, § 46.08; 47 Ohio Jurisprudence3d (1994) 162-163, Family Law, § 909; also see 2 American Jurisprudence2d (1994) 881-882, Adoption, § 13. The "failure to communicate" envisioned by R.C. 3107.07(A) is tantamount "to a complete abandonment of current interest in the child." 2 Merrick-Rippner, supra, at 728. However, in the case at bar we find no evidence that appellant has abandoned interest in Tanner. To the contrary, through the short duration of Tanner's life appellant has shown considerable interest. The uncontroverted evidence reveals that appellant (1) gave a camcorder to Kathryn to record video of Tanner; (2) sent Kathryn disposable cameras to take pictures of Tanner; (3) saw Tanner twice in the year following his birth; (4) sent birthday and Christmas presents to Tanner every year after he was born; (5) tried to visit Tanner and take him to a family wedding in 2001; (6) tried to arrange another visit for Tanner and his mother to California in 2001; (7) paid child support for Tanner; and (8) commenced proceedings to enforce visitation rights when it appeared to appellant that Kathryn was reticent in facilitating appellant's attempts to visit his son. We do not believe that this evidence leads to the conclusion that appellant lost all interest in his child.
 {¶ 18} We also note that if the gifts sent in 2000 arrived just a few days later, or if the 2001 gifts arrived just a few days earlier, we would clearly be outside the statute. We believe that the failure to communicate determination should be patently obvious and, indeed, most of the time it is. If there was a failure to communicate in this case, however, we believe that it was justified. We hasten to add, however, that if appellant proves to be a disinterested father, and does not communicate with Tanner in the future, then appellee may, of course, refile his petition for adoption. In the meantime, however, we conclude that under the particular facts and circumstances of this case appellant's consent for the adoption was necessary.
 {¶ 19} For these reasons, appellant's two assignments of error are well-taken and are hereby sustained. The judgment of the trial court is hereby reversed and this case is remanded for further proceedings, including dismissal of the petition if appellant will not consent to the adoption.
JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed, that the case be remanded for further proceedings and that appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J. Abele, J.: Concur in Judgment Opinion.
Kline, J.: Concurs in Judgment Only.
[1] Kathryn testified that she believed that Tanner was too young to make the trip and be around people with whom he was not familiar. Tanner was apparently supposed to be a ring bearer at his paternal aunt's wedding and Kathryn was also afraid that he would misbehave and that this may cause problems with the family.
[2] Ironically, the 2001 birthday/Christmas presents sent by appellant arrived the day appellee filed his adoption petition. The record suggests, however, that those presents were delivered in late afternoon or the early evening, several hours after the petition was filed in court.
[3] Despite Tanner's infancy, appellee, Kathryn and the entire Burdette family testified that his communicative skills were well developed for a child his age.
[4] We note that, although the adoption proceeding has yet to be resolved, the order being appealed herein is final and appealable pursuant to R.C. 2505.02 and we have jurisdiction to review the matter under Section 3(B)(2), Article IV of the Ohio Constitution. See In reAdoption of Greer (1994), 70 Ohio St.3d 293, 638 N.E.2d 999, at paragraph one of the syllabus.
[5] Although not entirely clear, the evidence below suggests that appellant has been paying child support for Tanner. The proceedings thus went forward on the "failure to communicate" prong of R.C. 3107.07(A) rather than the "failure to support" prong.
[6] We find this aspect of the statute troubling. Given that appellant's only scheduled visitation with his son in 2001 was unilaterally canceled by Kathryn, and considering that father and son live on opposite ends of the country, there was little chance for them to interact other than by phone. Because the incoherent babbling of a child over the telephone does not constitute communication for purposes of R.C. 3107.07(A), this makes it more difficult for appellant to preserve his rights.
[7] The Bovett case dealt with the "failure to support" prong of R.C.3107.07(A) and the majority specifically noted that the "failure to communicate" prong was not at issue in the case. 33 Ohio St.3d at 104, fn. 1. Nevertheless, the same reasoning should also apply to the "failure to communicate" prong of the statute and in fact has been applied to that prong in case law from intermediate appellate courts. See e.g. In re Doe
(1997), 123 Ohio App.3d 505, 508, 704 N.E.2d 608; In re Adoption ofLauck (1992), 82 Ohio App.3d 348, 350-351, 612 N.E.2d 459.
[8] Appellant and Kathryn each gave differing accounts of the proposed trip to California. Appellant related that Kathryn had a friend in San Francisco that she wanted to see and the two of them were going to accompany appellant's parents on their tour of wine country. Kathryn did not recall that much planning to the trip. She simply related that appellant asked her to come out and that she was unable to make it.
[9] As stated previously, Kathryn stated that she feared that Tanner might misbehave and that he may be overwhelmed by people that he did not know.
[10] Appellee testified at the hearing that he was interested in adopting Tanner "all along." Appellee is also an attorney who has previously represented clients in adoption proceedings and is aware of the laws concerning when consent of the father is necessary for that adoption. Nevertheless, appellee testified that he advised his fiancé not to interfere with the visitation rights of Tanner's father.