DECISION AND JUDGMENT ENTRY
{¶ 1} Darlene Jackson appeals the Adams County Probate Court's determination that her consent to the adoption of her son is unnecessary because she failed to communicate with him for the one year period preceding the filing of the adoption petition. Ms. Jackson contends that her failure to communicate was justifiable since she interpreted a court order terminating her visitation privileges as prohibiting any contact with Christopher. However, the order only prohibited visitation and Ms. Jackson could have pursued other means of communication with Christopher. Accordingly, we conclude that the trial court's decision that her failure to communicate with her son was not justified is supported by competent, credible evidence.
 {¶ 2} Ms. Jackson gave birth to Christopher in September 1991. In a subsequent paternity action, the Brown County Juvenile Court determined that Thomas Mineer, Mrs. Mineer's husband, is Christopher's father. In May 1994, Ms. Jackson was arrested for driving while under the influence and failing to have Christopher in a seat belt. The court removed Christopher from Ms. Jackson's custody and placed him in shelter care with the Brown County Department of Human Services. The Brown County Juvenile Court later found Christopher to be a dependent child.
 {¶ 3} In August 1994, the Brown County court placed Christopher in Mr. Mineer's custody and granted Ms. Jackson visitation. The court suspended Ms. Jackson's visitation privileges in December 1994 but reinstated them in February 1995. However, in May 1995, the court again suspended Ms. Jackson's visitation with Christopher. In March 1998, the Brown County Juvenile Court apparently held a hearing to review the status of visitation but made no changes to its previous order.
 {¶ 4} On September 4, 1998, Mrs. Mineer filed a petition in the Adams County Probate Court to adopt Christopher. There, Mrs. Mineer alleged that Ms. Jackson failed without justifiable cause to communicate with and provide support for Christopher for at least one year prior to the filing of the petition. The court granted Mrs. Mineer's adoption petition.
 {¶ 5} However, in June 2001, Ms. Jackson filed a motion to set aside the adoption, alleging that she had not been served with notice of the adoption hearing as required by statute. The court agreed, set aside its prior order granting the adoption, and scheduled the matter for a full hearing.
 {¶ 6} After hearing testimony from the Mineers and Ms. Jackson, the trial court concluded that Ms. Jackson had provided some support for Christopher within the year preceding the filing of the adoption petition, but had not communicated with Christopher during that period. The court found that the failure to communicate was not justified and, therefore, Ms. Jackson's consent to the adoption was unnecessary under R.C. 3107.07(A).
 {¶ 7} Ms. Jackson timely appealed the court's entry.[1]
In her sole assignment of error, Ms. Jackson asserts that the trial court's finding that she failed to communicate with Christopher without justifiable cause is contrary to law and against the manifest weight of the evidence.
 {¶ 8} A finding that parental consent is not necessary for an adoption will not be disturbed on appeal unless it is against the manifest weight of the evidence. See In re Adoption of Bovett
(1987), 33 Ohio St.3d 102, 515 N.E.2d 919, at paragraph four of the syllabus; In re Adoption of Masa (1986), 23 Ohio St.3d 163,492 N.E.2d 140, at paragraph two of the syllabus. In other words, if the trial court's finding is supported by some competent credible evidence, we cannot reverse that decision on appeal. SeeShemo v. Mayfield Hts., 88 Ohio St.3d 7, 10, 2000-Ohio-258,722 N.E.2d 1018, 1022; Vogel v. Wells (1991), 57 Ohio St.3d 91, 96,566 N.E.2d 154, 159; C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 {¶ 9} Further, the trial court, as the trier of fact, is in a better position than the appellate court to view the witnesses and to observe their demeanor, gestures and voice inflections, and to use those observations in weighing the credibility of the proffered testimony. See Myers v. Garson (1993),66 Ohio St.3d 610, 615, 1993-Ohio-9, 614 N.E.2d 742, 745; Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Accordingly, we defer to the trial court on issues of weight and credibility. Moreover, a trial court is free to believe all, part, or none of the testimony of each witness who appears before it. Rogers v. Hill (1998), 124 Ohio App.3d 468, 470,706 N.E.2d 438, 439; Stewart v. B.F. Goodrich Co. (1993),89 Ohio App.3d 35, 42, 623 N.E.2d 591, 596.
 {¶ 10} Parents have a fundamental liberty interest in the care, custody and management of their children. Troxel v.Granville (2000), 530 U.S. 57, 65, 147 L.Ed.2d 49, 56,120 S.Ct. 2054, 2060; Santosky v. Kramer (1982), 455 U.S. 745, 753,71 L.Ed.2d 599, 606, 102 S.Ct. 1388, 1394-1395. The right to raise one's child is an essential and basic civil right. In re Hayes
(1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, 682-683; In reMurray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171. An adoption, obviously, terminates that right. In re Adoption ofGreer, 70 Ohio St.3d 293, 298, 1994-Ohio-69, 638 N.E.2d 999,1003; also see, R.C. 3107.15(A)(1). Therefore, unless a specific statutory exemption applies, children cannot be adopted without the consent of their natural parents. See R.C. 3107.06(A); also see, McGinty v. Jewish Children's Bur. (1989),46 Ohio St.3d 159, 161, 545 N.E.2d 1272, 1274.
 {¶ 11} R.C. 3107.07(A) provides such an exemption: "A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." The party that seeks to adopt a child without parental consent must prove, by clear and convincing evidence, both (1) that the natural parent failed to support or to communicate with the child for the requisite one-year time period, and (2) that the failure was without justifiable cause.In re Adoption of Bovett (1987), 33 Ohio St.3d 102,515 N.E.2d 919, at paragraph one of the syllabus; In re Adoption of Masa
(1986), 23 Ohio St.3d 163, 492 N.E.2d 140, at paragraph one of the syllabus.
 {¶ 12} The parties agree that the relevant period for determining whether communication occurred between Ms. Jackson and her son is from September 14, 1997 to September 14, 1998, the one year period preceding the filing of the adoption petition. Ms. Jackson does not contest the trial court's finding that she did not communicate with Christopher during this period. Rather, she argues that the trial court erred in concluding that her failure to communicate was not justifiable. Nonetheless, we briefly address the trial court's finding that Ms. Jackson failed to communicate with Christopher.
 {¶ 13} Both Mr. and Mrs. Mineer testified that Ms. Jackson did not communicate with her son in any manner during the relevant period. Ms. Jackson's testimony did not contradict the Mineers'; however, Ms. Jackson testified that she left a card and a Christmas gift for Christopher at her then-attorney's office. Ms. Jackson conceded that she did not know whether the gift and card were ever delivered to Christopher.
 {¶ 14} In its entry, the trial court noted that there was no collaborating testimony supporting Ms. Jackson's claim that she delivered Christmas gifts for Christopher to her attorney.[2] The court held that Ms. Jackson's action did not constitute a "communication" because it was a failed attempt to communicate through a third party. The court further held that the giving of Christmas gifts does not necessarily establish communications and there must be something more than the giving of gifts.
 {¶ 15} Ms. Jackson testified that she sent a gift and acard, not merely a gift, to Christopher. It is well-settled that the sending of a gift and a card constitutes communication for purposes of R.C. 3107.07(A). In the Adoption of Tanner WarrenCutright, Ross App. No. 03CA2696, 2003-Ohio-3795. Nonetheless, we agree with the court's finding that, even crediting Ms. Jackson's testimony that she gave a card and a gift to her attorney for delivery to Christopher, Ms. Jackson failed to communicate with Christopher during the relevant period.
 {¶ 16} Although the verb "communicate" is not defined in R.C. Chapter 3107, courts have generally interpreted it to mean, in the adoption context, "to make known, to convey knowledge and/or information, to send information or messages." Cutright, supra, citing In re Adoption of Peshek (2001), 143 Ohio App.3d 839,843, 759 N.E.2d 411. The essence of communication is the passing of a thought from the mind of one person to another. Cutright,
citing In re Adoption of Jordan (1991), 72 Ohio App.3d 638,644, 595 N.E.2d 963. Therefore, a message that is not received or otherwise successfully passed on to the mind of another is not communicated. Cutright, citing Hedrick, supra, at 626. Because there is no evidence that the gift and card Ms. Jackson claims she provided to her attorney for Christopher's benefit was ever delivered to him, we conclude that sufficient competent and credible evidence exists to support the trial court's conclusion that Ms. Jackson failed to communicate with Christopher for the one year period prior to the filing of the adoption petition.
 {¶ 17} We now turn to the trial court's finding that no justifiable cause existed for the failure to communicate. As we stated previously, Mrs. Mineer had the burden of proving, by clear and convincing evidence, that no justifiable cause existed for Ms. Jackson's failure to communicate with Christopher.Bovett, supra, at paragraph one of the syllabus. Once Mrs. Mineer established, by clear and convincing evidence, that Ms. Jackson failed to communicate with Christopher for the requisite one year period, the burden of going forward with some evidence demonstrating a valid reason for the communication failure shifted to Ms. Jackson. Bovett at paragraph two of the syllabus. Once Ms. Jackson made this showing, the burden of going forward and persuasion rested with Mrs. Mineer to prove that the stated justification was not reasonable. Id.
 {¶ 18} Mrs. Mineer proved that Ms. Jackson failed to communicate with Christopher during the relevant one year period. To justify her failure to communicate, Ms. Jackson relied upon the Brown County Juvenile Court's order discontinuing her visitation privileges with Christopher. We are not persuaded that Ms. Jackson's stated reason for failing to communicate with her son is even facially valid.
 {¶ 19} While the Brown County court order did, in fact, prevent Ms. Jackson from visiting with Christopher, the trial court found that it did not prevent Ms. Jackson fromcommunicating with Christopher in other manners. Ms. Jackson claims that she interpreted the Brown County order as a "no contact" order. The trial court rejected Ms. Jackson's claim that her misinterpretation of the order was justifiable cause for her failure to communicate and we conclude that there is competent credible evidence to support this conclusion.
 {¶ 20} The court was free to disbelieve Ms. Jackson's claim that the she misunderstood the juvenile court's entry, particularly in light of the fact that Ms. Jackson's testimony was inconsistent. Although Ms. Jackson testified that she understood she was allowed to have "no contact" with Christopher, she also testified that she provided a gift and a card to her attorney for delivery to her son because "that was what he advised me to do * * * go through him to get things to my sons." Furthermore, if Ms. Jackson was uncertain as to the meaning of the juvenile court order, she could have contacted her counsel or the court to inquire as to its parameters.
 {¶ 21} Ms. Jackson relies on several cases to support her claim that her failure to communicate was justifiable but, having reviewed each of these cases, we conclude that Ms. Jackson's reliance is misplaced. In In the Matter of the Adoption of BryanW. (May 2, 1997), Huron App. No. H-96-039, the Sixth District Court of Appeals held that the natural mother's failure to communicate with her son was justifiable because the probate court's prior order prohibited her from having any contact or communication with her child. As noted above, the order issued by the Brown County Juvenile Court prohibited only visitation, not all contact between Ms. Jackson and Christopher as did the order in Bryan W.
 {¶ 22} In In re Adoption of Marc Adrian Dewerth and RobertMarcel Dewerth (Jan. 24, 1985), Cuyahoga App. No. 48060, the Eighth District Court of Appeals did not address whether the natural mother's failure to communicate was justified. Rather, the court concluded that the mother's sending of a birthday card and Christmas cards during the relevant period constituted communication such that her consent was necessary for the adoption of her sons. Here, we have already determined that no communication occurred during the relevant period. Therefore,Dewerth is inapplicable.
 {¶ 23} In In the Matter of the Adoption of Caitlyn M. Way,
Washington App. No. 01CA23, 2002-Ohio-117, we concluded that the natural mother's failure to communicate with her daughter was justified because the trial court had terminated her visitation rights and the petitioner thwarted several attempts by the mother to contact the daughter by telephone. We found that a non-custodial parent's failure to communicate with her child is justifiable when the child's custodian interferes with the communication. Id., citing In re Adoption of Hupp (1982),9 Ohio App.3d 128, 131-132, 458 N.E.2d 878, 883-884.
 {¶ 24} There is no evidence that either Mr. or Mrs. Mineer interfered with any attempts by Ms. Jackson to communicate with Christopher. Ms. Jackson refers to Mr. Mineer's testimony that he interpreted the juvenile court's order as a "no contact" order and that he would not have allowed Ms. Jackson to speak with Christopher by telephone. However, the fact that Mr. Mineer would not have allowed Christopher to speak with Ms. Jackson is irrelevant in light of the fact that Ms. Jackson made no attempt to do so. Furthermore, Mr. Mineer testified that if Ms. Jackson had written a letter to Christopher, he would have contacted his attorney or the court. Presumably, Mr. Mineer's counsel or the juvenile court would have informed Mr. Mineer that Ms. Jackson was allowed to communicate with Christopher despite the suspension of her visitation privileges. Additionally, Mrs. Mineer testified that she would probably have given Christopher any letters from Ms. Jackson and allowed him to decide if he wanted to read them. Because Ms. Jackson failed to make any attempts to communicate with Christopher, the Mineers' testimony as to what they would have done had she made any attempts at communication does not support Ms. Jackson's claim that her failure to communicate was justified.
 {¶ 25} Lastly, we address Ms. Jackson's contention that the trial court improperly made findings related to Christopher's best interest in its judgment entry. Specifically, Ms. Jackson argues that the trial court included irrelevant information regarding her past criminal history and unverified information contained in the Brown County Juvenile Court record in its entry. While we agree that several of the trial court's findings have no bearing on whether Ms. Jackson failed to communicate and whether that failure was justifiable, the court also made the requisite findings and conclusions. Therefore, any surplus language in its entry is harmless.
 {¶ 26} Accordingly, we overrule Ms. Jackson's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
Kline, P.J. Abele, J., concur in Judgment and Opinion.
[1] A trial court's finding excusing consent to an adoption pursuant to R.C. 3107.07(A) is a final appealable order. In reAdoption of Greer, 70 Ohio St.3d 293, 298, 1994-Ohio-69,638 N.E.2d 999.
[2] The trial court stated that Ms. Jackson delivered the gift in 1995. However, Ms. Jackson testified, with some prodding from counsel, that the gift and card were provided to her attorney in 1997.