OPINION
{¶ 1} Petitioner-appellant, William M., appeals the decision of the Butler County Court of Common Pleas, Probate Division, denying his petition to adopt his stepdaughter K.R.G.
 {¶ 2} Jody G. and Tara M. were divorced in 1996. While married, they had two children, a son and a daughter, K.R.G. (born in October 1995). Tara was granted custody of the children and Jody was granted visitation every other weekend. Tara subsequently married appellant; Jody remarried as well. On November 16, 2005, appellant filed a petition in the trial court to adopt K.R.G. Appellant alleged in his petition that Jody's consent was not required because he had failed without justifiable cause to communicate with K.R.G. for a period of at least one year immediately preceding the filing of the adoption petition. A hearing on the petition revealed the following facts:
 {¶ 3} Between the time of the divorce and December 2003, Jody regularly exercised his visitation with both his son and K.R.G. During most of that time, K.R.G. had urination problems. According to Jody, K.R.G. would indiscriminately urinate in her pants or on the floor throughout his house both during the day and the night, would do so whenever she wished, and would lie about it. According to Jody, K.R.G. would do this on purpose, including out in public, even though a bathroom might be nearby. As a result, Jody could not take K.R.G. out to places, there was a stench throughout the house, carpets were ruined, and a bad example was set for and followed by his younger child from his remarriage. By contrast, Tara testified that K.R.G.'s condition was under control during the day, that K.R.G. still wetted her bed at times at night, and that she had never indiscriminately urinated all over the floor during the day at her house.
 {¶ 4} In December 2003, both K.R.G. and her brother were staying at Jody's house for a weekend visitation. That weekend, K.R.G. had two urination incidents. According to Jody, the second incident involved K.R.G. urinating on her half sister's pillow, placing it on a bed with the wet side down, and initially blaming the dog for it. Following that incident, Jody took K.R.G. back to Tara's house instead of taking her to a planned Christmas party at his work. This was K.R.G.'s last visit to her father's house. This was also the last time that Jody had physical contact or visitation with K.R.G., even though he continued to regularly exercise his visitation with his son. Even when he would pick up his son at Tara's house, Jody would not go in to see K.R.G. or ask to see her. Jody testified that K.R.G. refused to visit with him over the 2003 Christmas break or for the 2004 Valentine's Day weekend, and that he did not force her to visit.
 {¶ 5} In the spring of 2004, Jody had a telephone conversation with K.R.G. During that conversation, K.R.G. asked if she could come visit with him at his house. Jody asked her if she was going to urinate in the house whenever she wished. After she said she would, Jody told her that until the urinating issue was resolved, she should stay at her mother's house. Jody then talked to Tara and told her that he could not have K.R.G. in his house doing this because it was creating more problems than necessary. This was the last time Jody and K.R.G. spoke.
 {¶ 6} Jody testified that he attempted to talk to Tara about the urination problem, and that he repeatedly tried to remedy the problem by using bribes, rewards, withholding privileges, and taking K.R.G. to the bathroom every hour, but to no avail. Asked if he had ever tried to talk to K.R.G. about it, Jody replied: "you could talk to her but it just. I'd rather talk to that wall 'cause I wouldn't hear I don't know. I hear I don't know so much it makes me sick."
 {¶ 7} Jody sent K.R.G. a birthday card in October 2004 and a Christmas card with a gift card in December 2004. He sent absolutely nothing during the entire year of 2005. As indicated earlier, Jody has not visited with his daughter since December 2003 and has not spoken to her since the spring of 2004.
 {¶ 8} On July 18, 2006, the trial court denied appellant's adoption petition. The trial court found that pursuant to In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, the Christmas card with gift card Jody sent K.R.G. in December 2004 constituted a communication between Jody and K.R.G., and that therefore Jody's consent to the adoption was required. In its decision, the trial court stated that by his actions, Jody had repudiated his daughter because of her urination problems, and that his testimony, the inflection of his voice during his testimony, and his courtroom demeanor evidenced his lack of compassion and concern for K.R.G. The trial court noted that the rule set forth inHolcomb was the law in Ohio and that it was required to follow it. This appeal follows.
 {¶ 9} In a single assignment of error, appellant argues that the trial court erred by finding that Jody's consent was required before appellant could adopt K.R.G., his stepdaughter.
 {¶ 10} Pursuant to R.C. 3107.07(A), consent to adopt a minor child is not required of a parent of the minor "when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor * * * for a period of at least one year immediately preceding * * * the filing of the adoption petition[.]" The party seeking to adopt a child without parental consent must prove by clear and convincing evidence that (1) the natural parent failed to support or communicate with the child for the requisite one-year time period, and (2) the failure was without justifiable cause. Holcomb, 18 Ohio St.3d at 368.
 {¶ 11} In the case at bar, appellant filed his adoption petition on November 16, 2005. The requisite one-year period therefore ran from November 16, 2004 to November 16, 2005. It is undisputed that Jody has provided support for K.R.G. during that one-year period; therefore, the only issue is whether he failed to communicate with her during that period.
 {¶ 12} The Ohio Supreme Court has held that "pursuant to the explicit language of R.C. 3107.07(A), failure by a parent to communicate with his or her child is sufficient to authorize adoption without that parent's consent only if there is a complete absence of communication for the statutorily defined one-year period." Holcomb at 366-367. Although the term "communicate" is not defined in R.C. Chapter 3107, it has been defined as "`to make known,' `to inform a person of, convey the knowledge or information of * * * to send information or messages [.]'"In re Adoption of Jordan (1991), 72 Ohio App.3d 638, 644.
 {¶ 13} Based upon the explicit language of R.C. 3107.07(A), Ohio appellate courts have held that sending cards and gifts constitutes "communication" for purposes of R.C. 3107.07(A). See In re Adoption ofPeshek (2001), 143 Ohio App.3d 839; In re Wells, Belmont App. No. 00 BA 49, 2001-Ohio-3411; and In re Adoption of Knisley (Aug. 17, 1983), Fayette App. No. 82-CA-23 (finding that the word "communication" as it appears in R.C. 3107.07[A] may not be encumbered by any requirement that such communication be effective, meaningful, or satisfactory; and that the legislature could have imposed these types of qualifications in the wording of the statute but chose not to do so). In light of theHolcomb mandate and the explicit language of R.C. 3107.07(A), we agree with the trial court's finding that Jody's mere sending of a Christmas card and gift card to K.R.G. in December 2004 constituted a communication for purposes of R.C. 3107.07(A).
 {¶ 14} In support of his argument that Jody's sending of the Christmas card and gift card should not be considered sufficient to constitute communication, appellant cites the concurring opinion of Justice Douglas in In re Adoption of Bovett (1987), 33 Ohio St.3d 102, in which Justice Douglas indicated that a parent's making one child support payment or sending a Christmas card during the requisite one-year period should not be considered sufficient to require his consent for an adoption. Id. at 107. However, as the Second Appellate District aptly stated, "Justice Douglas's concurring opinion in Bovett is not controlling. No matter how sympathetic we may be with Justice Douglas's position, the question presented here is governed by the majority opinion in Holcomb[.]"Peshek, 143 Ohio App.3d at 843.
 {¶ 15} Asked to determine the legislature's intended meaning of the term "communicate" as used in R.C. 3107.07(A), the supreme court inHolcomb held that:
 {¶ 16} "Our reading of the statute indicates that the legislature intended to adopt an objective test for analyzing failure of communication * * *. The legislature purposely avoided the confusion which would necessarily arise from the subjective analysis and application of terms such as failure to communicate meaningfully,substantially, significantly, or regularly. Instead, the legislature opted for certainty. It is not our function to add to this clear legislative language. Rather, we are properly obliged to strictly construe this language to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights." Holcomb, 18 Ohio St.3d at 366.
 {¶ 17} Clearly, the foregoing language in Holcomb does not allow for the exception for a de minimis communication urged by Justice Douglas in his concurrence in Bovett. Instead, a complete absence of communication is required, and reviewing courts are not to assess whether the communication was meaningful, substantial, significant, or regular.Peshek, 143 Ohio App.3d at 844. Because Jody did send one Christmas card with a gift card during the requisite one-year period, he did communicate with K.R.G. under R.C. 3107.07(A), and his consent is required for K.R.G.'s adoption.
 {¶ 18} We therefore find that the trial court did not err in finding that Jody's consent to K.R.G.'s adoption was required and by denying appellant's adoption petition on that ground. The assignment of error is overruled.
 {¶ 19} Judgment affirmed.
WALSH, P.J., and BRESSLER, J., concur.