[Cite as *In re J.D.T.*, 2012-Ohio-4537.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: | ) ) ) | |
| J.D.T. | ) ) ) ) ) ) | CASE NO. 11 HA 10  OPINION |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from Court of Common Pleas, Juvenile Division, of Harrison County, Ohio Case No. 20115005 |
| JUDGMENT: | Affirmed |

APPEARANCES:

| | |
|---|---|
| For Petitioner-Appellant | Atty. T. Owen Beetham 146 South Main Street P.O. Box 128 Cadiz, Ohio 43907 |
| For Respondent-Appellee | Atty. Jonathan E. Morris 116 Cleveland Ave., N.W. #418 Canton, Ohio 44702 |

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 27, 2012

DONOFRIO, J.

{¶1} Appellant, Todd Triplett, appeals from a Harrison County Common Pleas Court, Juvenile Division decision denying his petition to adopt his step-son.

{¶2} Appellant is married to Curry. Curry is the biological mother of nine-year-old J.D. Appellee is J.D.'s biological father. Appellee and Curry are divorced.

{¶3} Appellant filed a petition to adopt J.D. on August 8, 2011. The petition alleged that appellee's consent was not required for the adoption because (1) appellee failed without justifiable cause to provide more than de minimis contact with J.D. for at least one year immediately preceding the filing of the petition and (2) appellee failed without justifiable cause to provide for J.D.'s maintenance and support as required by law or judicial decree for at least one year immediately preceding the filing of the petition. Curry filed a consent to adoption. Appellee objected to the petition.

{¶4} The court held a hearing on the petition where it heard from the parties, Curry, and several of appellee's relatives. The trial court first found that appellee's child support payment of $44.05 during the year preceding the filing of the adoption petition was sufficient to require his consent to the adoption. Next, it found that appellee had contact with J.D., attempted numerous phone contacts with J.D., and was denied contact by Curry. Thus, the court determined that appellee's lack of consistent contact with J.D. was justifiable. Based on the above, the court concluded that appellee's consent was required in order for appellant to adopt J.D. Because appellee would not give consent for the adoption, the court dismissed appellant's petition.

{¶5} Appellant filed a motion for reconsideration in the trial court, which the court denied. Appellant then filed a timely notice of appeal on November 21, 2011.

{¶6} Appellant raises three assignments of error. His first two assignments of error make very similar arguments and, therefore, we will address them together. They state:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S
> PETITION FOR ADOPTION BY REFUSING TO RECOGNIZE AND

FAILING TO APPLY THE CORRECT STANDARD OF DE MINIMIS PERTAINING TO CONTACT WITH THE MINOR CHILD UNDER R.C. 3107.07, AND THE TRIAL COURT'S FINDINGS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, TO THE APPELLANT'S PREJUDICE.

THE TRIAL COURT ERRED BY REFUSING TO RECOGNIZE AND ITS FAILURE TO APPLY THE CORRECT STANDARD OF PROOF REGARDING JUSTIFIABLE CAUSE FOR THE NONCUSTODIAL PARENT'S FAILURE TO PROVIDE MORE THAN DE MINIMIS CONTACT WITH THE MINOR CHILD, TO THE APPELLANT'S PREJUDICE.

{¶7}    Appellant argues that he proved by clear and convincing evidence that appellee failed to have more than de minimis contact with J.D. for the year preceding the adoption petition and the failure was without justifiable cause.  He points to his and Curry's testimony in support regarding the lack of contact between appellee and J.D.  Appellant asserts that appellee presented no testimony to the contrary. Appellant further argues that the trial court failed to apply the correct standard pertaining to "justifiable cause."

{¶8}    Pursuant to R.C. 3107.07(A), consent to adoption is not required from

[a] parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

**{¶9}** This version of R.C. 3107.07(A) became effective April 7, 2009. Prior to that time, the statute required a finding that the parent failed to "communicate" with the minor child for a period of one year. Former R.C. 3107.07(A). The Legislature amended the statute to require a finding that the parent failed to "provide more than de minimis contact" with the minor child for a period of one year. By changing the standard from "communicate," which could imply a single contact, to "more than de minimis contact," which seems to imply more than a single contact, the Legislature indicated its intent to require more effort from the parent to have contact and communication with the child.

**{¶10}** According to the statute, either a lack of contact or a lack of support can relieve the petitioner from having to obtain the parent's consent.

**{¶11}** An adoption case such as this involves the termination of fundamental parental rights. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), set out the burden of proof for such cases: "the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication." While R.C. 3107.07(A) has since been amended to add the "de minimis contact" language, the burden of proof has remained the same. See e.g., *In re Adoption of M.S.*, 7th Dist. Nos. 11-BE-14, 11-BE-15, 2001-Ohio-6403. Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). Where a party must prove a claim by clear and convincing evidence, a reviewing court must examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

**{¶12}** We must examine the evidence to determine whether the trial court properly found that appellant failed to meet his burden.

**{¶13}** Appellant testified that J.D. lives with Curry and him. (Tr. 8). He

testified that the last time appellee saw J.D. was probably in early 2010. (Tr. 9). He stated that the last time appellee contacted J.D. was through a Christmas letter in 2010. (Tr. 9-10). He also stated that appellee called and left a message for J.D. on the answering machine on his birthday, which was in September 2010. (Tr. 10). The only other contact after the petition was filed, appellant stated, was a random contact when J.D. rode his bike to a nearby gas station and appellee happened to be there. (Tr. 11).

{¶14} Curry testified that while she could not recall the last time appellee saw J.D., it had been more than a year. (Tr. 27). She stated that the only contacts appellee had with J.D. in the past year were a message appellee left on the answering machine for J.D.'s birthday and a Christmas drawing/letter that appellee's mother dropped off for J.D. (Tr. 27). Curry further testified that the last time appellee tried to contact J.D. was in July 2010. (Tr. 29).

{¶15} Curry further testified that after appellee was charged with an OVI in May 2010, she no longer permitted him to pick up J.D. for visitation. (Tr. 39-40). And she testified that at that time, she also told appellee not to call anymore. (Tr. 51). She also acknowledged that appellee filed a pro se motion in January 2011 to hold her in contempt for not providing him with his court-ordered visitation. (Tr. 48, 54).

{¶16} As to J.D.'s history with appellee, Curry testified that she and appellee were married and lived together with J.D. until he was almost four years old and that J.D. knew appellee as his father. (Tr. 31-32).

{¶17} Appellee testified that after Curry told her not to call J.D. anymore, he called every day for at least three weeks straight and left daily messages. (Tr. 71, 75). He then called regularly for the next two months. (Tr. 75). Whenever Curry answered the phone, she would not allow J.D. to speak with appellee. (Tr. 76). Appellee also testified that he would have his parents and sister call to contact J.D. (Tr. 77-78). He stated that within the last year he had called and left messages over 20 times for J.D. saying that he loved him and he missed him, but his calls were never returned. (Tr. 79-80). Appellee further testified that in July 2011, he set up a

meeting with J.D. through J.D.'s friend and met J.D. on the street corner. (Tr. 72). He also stated that he met J.D. by chance twice in the past few months and J.D. was excited to see him and greeted him with hugs and kisses. (Tr. 74). Appellee also testified that he sent a Christmas letter to J.D. in December 2010, which his mother delivered. (Tr. 79). Appellee next testified regarding his January 2011 pro se filing with the court. (Tr. 80). He stated that he did not have the money to hire an attorney so he wrote to the judge in an attempt to set up a court date so that he could see J.D. (Tr. 80-81). And he stated that he has asked appellant and Curry to go to dinner to talk about J.D. and they have refused. (Tr. 86).

{¶18} Tina Marvin is appellee's step-mother. Tina testified that Curry had allowed her and her husband to visit with J.D., but that when Curry found out that they allowed J.D. to talk to appellee, Curry did not allow J.D. to visit with them anymore. (Tr. 109-110). Tina also testified that appellee had stayed with her on and off for the past year and that she had heard him make periodic phone calls to Curry. (Tr. 110-111).

{¶19} Danny Marvin is appellee's father. He too testified that he overheard appellee make between four and six phone calls to the Triplett household in the past year. (Tr. 116-117). Danny stated that appellee was attempting to talk to J.D. (Tr. 117). Danny also testified that he tried to contact Curry ten to twelve times in the last year to visit J.D., but he was ignored. (Tr. 119).

{¶20} Susan Marvin is appellee's mother. She testified that she brought J.D. a Christmas letter from appellee in December 2010, along with some gifts from her. (Tr. 123-124). She also stated that appellee lived with her in August 2010, and that appellee made daily phone calls from her phone to Curry. (Tr. 125).

{¶21} Danielle Gero is appellee's sister. Gero testified that she has maintained a relationship with Curry since Curry's divorce from appellee. (Tr. 130). She also stated that Curry has allowed her to visit with J.D. as long as appellee and their parents were not around. (Tr. 130-132). Gero testified that Curry has repeatedly told her that she will not allow appellee to see J.D. (Tr. 137, 140).

**{¶22}** Appellant did not prove by clear and convincing evidence that appellee failed to have more than de minimis contact with J.D. for one year *and* that there was no justifiable cause for this failure. Appellee had only minimal contact with J.D. in the year since appellant filed the adoption petition. But the testimony indicated that his efforts were thwarted by Curry. The evidence from appellee's witnesses was that appellee called the Triplett household repeatedly in an attempt to contact J.D. and left frequent messages. Appellant and Curry testified to the contrary. But whether to believe the Tripletts or the Marvins was a matter of credibility for the court to determine.

**{¶23}** In addition to the phone calls, appellee also sent a Christmas letter to J.D., which his mother delivered. And appellee went so far as to set up a secret meeting through one of J.D.'s friends so that he could see his son.

**{¶24}** Furthermore, Curry testified that she did not permit J.D. to speak on the phone with appellee and did not allow appellee to visit with J.D. And Gero testified that Curry only allowed her to visit with J.D. as long as she promised that appellee would not be there. Similarly, Tina testified that Curry had allowed her and Danny to visit with J.D. until Curry learned that they had allowed J.D. to speak with appellee. Then Curry would not permit them to visit J.D. any longer.

**{¶25}** Significant interference, or significant discouragement, in the communication between the non-custodial parent and the child by the custodial parent establishes justifiable cause for the non-custodial parent's failure to communicate with the child. *Holcomb*, at 367-368. Here Curry significantly discouraged and interfered with any attempt appellee made to communicate with J.D. She even admitted that she would not allow any contact between them.

**{¶26}** Furthermore, the burden was on appellant to prove that appellee was without justifiable cause for failing to communicate with J.D. Appellee, as the non-consenting parent, had no burden to prove that his failure to communicate was justifiable. *Id.*, at 368.

**{¶27}** Based on the above, the trial court properly found that appellee's lack of

consistent contact with J.D. was justifiable. Accordingly, appellant's first and second assignments of error are without merit.

{¶28} Appellant's third assignment of error states:

THE TRIAL COURT ERRED IN FINDING THAT RESPONDENT-APPELLEE'S PAYMENT OF $44.05 FOR THE YEAR PRECEDING THE FILING OF THE PETITION FOR ADOPTION CONSTITUTED MAINTENANCE AND SUPPORT OF THE MINOR CHILD, TO THE APPELLANT'S PREJUDICE.

{¶29} In this assignment of error, appellant urges the trial court's finding that appellee's payment of $44.05 in child support constituted support and maintenance was in error. He states appellee has a child support arrearage of nearly $17,000 and appellee has been incarcerated for his failure to pay support. He claims the $44.05 was a negligible amount and, therefore, insufficient to demonstrate that appellee provided for J.D.'s maintenance and support.

{¶30} An appellate court reviews a probate court's determination of whether a financial contribution constitutes maintenance and support under R.C. 3107.07(A) for an abuse of discretion. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, paragraph two of the syllabus. But whether a party has proved justifiable cause for the failure to pay child support by clear and convincing evidence is a separate question for the probate court and will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.*

{¶31} The evidence as to this issue was as follows.

{¶32} Triplett testified that appellee had not made any child support payments or given J.D. any monetary gifts in the past year. (Tr. 10). Curry also testified that appellee had not made any child support payments or monetary gifts to J.D. in the past year. (Tr. 27-28). Curry did acknowledge that a $40 payment was reflected on a child support document, but she did not recall receiving it. (Tr. 28). She also acknowledged that appellee made a $780 child support payment on August 2, 2010,

just one week before the one-year look-back period began, as appellant filed his petition on August 8, 2011. (Tr. 43-44).

**{¶33}** A child support form showing the payment of $44.05 from appellee was also admitted. (Tr. 59; Ex. B).

**{¶34}** Appellee testified that he has had minimal employment, only earning about $500 in the last year from an employer, where he had received only two paychecks, and about $300 from side jobs. (Tr. 82-83, 84-85). He further testified that he did not receive any unemployment, social security, or other types of payments. (Tr. 85). He stated that he made it through the last year with the help of his family. (Tr. 83). Appellant testified that he had made efforts to find employment and had submitted on-line applications, but that he had had a hard year and could not find gainful employment. (Tr. 84).

**{¶35}** Appellant stated that he made the $44.05 payment reflected in the child support records in July 2011. (Tr. 83). This money came from the $500 he had earned. (Tr. 83). And he stated that he made a $780 payment in August 2010. (Tr. 97). He admitted that he was recently sentenced to serve some jail time for non-payment of support. (Tr. 97).

**{¶36}** The trial court found that appellee's child support payment of $44.05 during the year preceding the filing of the adoption petition was sufficient to require his consent to the adoption.

**{¶37}** R.C. 3107.07(A) places the burden on the petitioner for adoption to prove his allegations of failure to support *and* lack of justifiable cause. *In re Adoption of Bovett*, 33 Ohio St.3d 102, 104, 515 N.E.2d 919 (1987), citing *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986). "Any change in this burden of proof could offend the Due Process Clause, for whether it is the state or a petitioner, the party bringing the action seeks to terminate fundamental parental rights and such party must support his allegations." *Id.*, quoting *Masa*, at 166.

**{¶38}** Appellant did not meet his burden of proving that appellee's failure to support J.D. lacked justifiable cause. Appellee testified that he was unemployed

during the time in question and earned a total of $800 for the year. He stated that he got through the year with the help of his family. He also stated that he looked for employment to no avail. And when appellant did earn $500, he made a $44 support payment. Appellant offered no evidence to rebut appellee's testimony that he could not find employment and was only able to earn $800 in the preceding year.

**{¶39}** Thus, appellant failed to meet his burden because he did not present substantial, credible evidence to demonstrate that appellee lacked justifiable cause in failing to support J.D. Moreover, we are bound to affirm a finding of justifiable cause for failure to support unless it is against the manifest weight of the evidence. *M.B.*, 131 Ohio St.3d at paragraph two of the syllabus. The manifest weight of the evidence supports the trial court's finding and for that reason we must affirm it.

**{¶40}** Accordingly, appellant's third assignment of error is without merit.

**{¶41}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., dissents with dissenting opinion.

Waite, P.J., concurs.

VUKOVICH, J., dissenting:

**{¶42}** By affirming the decision of the Probate Court, my colleagues have not given full weight to the language of the applicable statute relative to step-parent adoption. Accordingly, I respectfully dissent.

**{¶43}** R.C. 3107.07(A) requires the prospective adoptive parent to show that the biological parent, without just cause, failed to "provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding the filing of the petition." If that is shown, then the court may grant the petition for adoption without the consent of the biological parent.

**{¶44}** From this, it is apparent that a court needs to make inquiry and determine the following questions: (1) what was the support obligation of the non-

consenting biological parent for the one year preceding the filing of the petition; 2) did that parent meet that obligation, and; (3) if the parent did not, was the failure to provide the support justifiable under the facts and circumstances of the case?

{¶45} Here, the probate court did not properly address the third prong of the statute. Essentially, it reach its decision that the payment of $44.05 over one year was sufficient based upon *In re Fetzer*, 118 Ohio App.3d 156 (3d Dist.1997). That case stands for the proposition that two payments of $10 was sufficient to be counted as support and maintenance of the child as contemplated by R.C. 3107.07(A). Moreover, the probate court reached its conclusion without any discussion as to why the biological parent had just cause not to pay the amount of court ordered child support.

{¶46} This is particularly an egregious error under the facts of this case. The biological father had a child support arrearage of approximately $17,000. He was jailed for his failure to pay his child support. And, he did not obtain a reduction in child support. All of these factors should have been considered by the probate court along with any other asserted defense which may have been offered as a defense to the father's noncompliance with the court ordered child support.

{¶47} The phrase "as required by law or judicial decree" as set forth in R.C. 3107.07(A) is not meaningless. When it is shown that the obligor of a judicially decreed support order has not substantially complied with its provision, that obligor must show the court reasons which constitute justifiable cause and the court must set forth its reasoning and conclusion if it finds that burden has been met. The probate court here, did not. Accordingly, I would reverse and remand this matter.