[Cite as *In re Adoption of J.R.H.*, 2013-Ohio-3385.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

IN THE MATTER OF: THE ADOPTION OF J.R.H.

Appellate Case No.     2013-CA-29

Trial Court Case No.   2012-5037

(Probate Appeal from Common Pleas
Court-Juvenile Division)

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of August, 2013.

. . . . . . . . . . .

JOHN C.A. JUERGENS, Atty. Reg. No. 37120, 1504 North Limestone Street, Springfield, Ohio 45503
        Attorney for Plaintiff-Appellant

PATRICK J. CONBOY, II, Atty. Reg. No. 70073, 5613 Brandt Pike, Huber Heights, Ohio 45424
        Attorney for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Appellant, J.H., appeals from a trial court decision finding that she forfeited her right to withhold consent to the adoption of her minor child, J.R.H.  J.H. contends that the trial court erred in finding that her consent was not necessary due to her lack of significant contact

with the minor child. J.H. further contends that the trial court erred in failing to find justifiable cause for her lack of more than de minimis contact with J.R.H.

{¶ 2} We conclude that the trial court did not err in concluding that J.H. had no more than de minimis contact with J.R.H. We further conclude that the trial court did not err in finding that J.H. lacked justifiable cause for having had minimal contact with her child. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} In February 2008, J.H. gave birth to J.R.H., a female child. The child's biological father was L.H. From the time of the child's birth until February 2009, L.H., J.H., and J.R.H. lived primarily with E.H. and K.H., the paternal grandparents.

{¶ 4} In February 2009, J.H. and L.H. moved out of the house, leaving J.R.H. in the care of E.H. and K.H. Between February and September 2009, the parties had an oral agreement regarding visitation. However, in September 2009, an agreed order of custody was filed, giving E.H. and K.H. legal custody of the minor child. Under the agreement, J.H. was allowed parenting time every other week for two days, to be agreed upon by the parties. J.H. was required to give one-week prior notice of the days that she requested. Parenting time must also be agreed to by E.H. and K.H., and they were entitled to refuse parenting time if they determined that it would be unsafe or inappropriate for either parent to exercise parenting time.

{¶ 5} In 2009, J.H. exercised the following parenting time: 45 minutes in February; 30 minutes in March; six hours in April; four hours in May; no time in June; two hours in July; no time in August; 45 minutes in September, two hours in October, and one hour in December.

There was a dispute about November 2009, as E.H. testified that no visitation occurred, and J.H. contended that she had seen J.R.H. on one evening.

{¶ 6} According to E.H., J.H. saw the minor child less each year. J.H. testified that she had seen J.R.H. once or twice a month in 2010, but she did not provide any specific dates or times. J.H. did indicate that her visitation was spotty and was not consistent. The last visitation J.H. had with the minor child was on May 26, 2011, which was more than a year before E.H. and K.H. filed a petition to adopt J.R.H.

{¶ 7} In April 2011, E.H. and J.H. exchanged text messages regarding why J.H. could not see J.R.H. unless she came to E.H.'s house. According to E.H., J.R.H. did not even know J.H., due to the infrequency of J.H.'s visits. E.H. stated that she would not permit J.H. to take the child out of the house after the child had gone several months without seeing her mother.

{¶ 8} In contrast, J.H. testified that E.H. began saying that she did not want J.R.H. to be around J.H. because she (J.H.) was a lesbian. After some angry texts were exchanged, E.H. then said that the issue was because J.H. had abused J.R.H.

{¶ 9} E.H. denied telling J.H. that her reason for requiring in-home visits was because J.H. was a lesbian. E.H. admitted to having heard rumors that J.H. was having "relations" with a lesbian who was HIV positive. However, her concern about J.H. taking J.R.H. away from the home was based on the fact that J.R.H. did not know J.H., and on the fact that J.H. had already admitted that her own mother, R.E., had been abusive to another grandchild.

{¶ 10} Despite these conversations, J.H. was permitted to see J.R.H. twice in May 2011. J.H. admitted at trial that she did not think that J.R.H. knew who she was in May 2011.

{¶ 11} J.H. testified that she asked to have J.R.H. brought to her college graduation at

the end of May 2011 or early June, but E.H. refused. There is no evidence in the record that any other visitation request was ever refused.

{¶ 12} Based on the record, it does not appear that J.H. contacted or attempted to contact E.H. or K.H. thereafter until August or September 2011, at which time their home telephone had been disconnected. J.H. did not try to text E.H. at the cell phone number she had previously used, because J.H. had upgraded to a new cell phone and had not saved E.H.'s cell phone number. At all times relevant, E.H. and K.H. lived at the same address where they had lived for several years, and where they easily could have been reached.

{¶ 13} Between May 2011 and February 23, 2012 (J.R.H.'s birthday), J.H. made at least four attempts to contact J.R.H., by leaving gifts or cards at E.H.'s and K.H.'s residence. J.H. did not file any motion in court to attempt to obtain visitation or to have E.H. and K.H. held in contempt of court, even though she was aware that she could have filed such motions. In 2010, J.H. had asked the clerk's office about filing a motion, but was told not to try filing without a lawyer. However, she could not afford a lawyer.

{¶ 14} In June 2012, E.H. and K.H. filed a petition for adoption with the trial court, seeking to adopt J.R.H. Their son, L.H., consented to the adoption.

{¶ 15} A hearing was held in February 2013, at which time the court heard testimony from L.H., E.H., J.H., and J.H.'s mother, R.E. J.H. was represented by an attorney.

{¶ 16} After hearing the evidence, the trial court concluded that E.H. and K.H. did not encourage a visitation schedule. The trial court also expressed the opinion that they had made visitation difficult to execute. Nonetheless, the court concluded that J.H. had failed to pursue any means that would enforce her right to visit her child, and that her efforts in stopping by the

residence during holidays were not consistent with a good faith effort to see her child and address the difficulty in executing a regular visitation schedule. The trial court, therefore, concluded that J.H. had failed to have more than de minimis contact with J.R.H. for more than a year before the petition was filed, and that her failure was without justifiable cause. Accordingly, the trial court held that J.H. had forfeited her right to contest the adoption.

{¶ 17}     J.H. appeals from the decision of the trial court.

## II.   Did the Court Err in Finding the Mother's Consent Unnecessary Due to Lack of Significant Contact?

{¶ 18}     J.H.'s First Assignment of Error states that:

The Court Erred in Finding that the Consent of the Mother Was Not Necessary Due to Lack of Significant Contact Between the Appellant and the Minor Child.

{¶ 19}     Under this assignment of error, J.H. contends that the gifts that were brought to the house after May 2011 are sufficient to require her consent for the adoption. In this regard, R.C. 3107.07(A) provides that consent to adoption is not required of a parent of a minor:

when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home

of the petitioner.

**{¶ 20}** The current statute was amended in 2008, and has been in effect since April 7, 2009. Prior to the amendment, R.C. 3107.07(A) stated that consent to adoption would not be required of a parent of a minor when "the parent has failed without justifiable cause to communicate with the minor* * * for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." Sub.H.B. 7, 2008 Ohio Laws 172 (effective April 7, 2009).

**{¶ 21}** "By changing the standard from 'communicate,' which could imply a single contact, to 'more than de minimis contact,' which seems to imply more than a single contact, the Legislature indicated its intent to require more effort from the parent to have contact and communication with the child." *In re J.D.T.*, 2012-Ohio-4537, 978 N.E.2d 602, ¶ 9 (7th Dist.).

**{¶ 22}** In arguing that her gifts to J.R.H. constituted more than de minimis contact, J.H. relies on cases like *In re Adoption of Peshek*, 143 Ohio App.3d 839, 759 N.E.2d 411 (2d Dist. 2001), in which we held that the presentation of a single Christmas card to a minor child, sent by the biological father, was sufficient to preclude a finding that the father "failed, without justifiable cause, to communicate with his daughter for the requisite one-year period * * *." *Id.* at 841. However, *Peshek* is distinguishable because it involved the former statute, which implied that a single contact would be sufficient communication. *J.D.T.* at ¶ 9.

**{¶ 23}** "Because cases such as these may involve the termination of fundamental parental rights, the party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure of communication."

(Citations omitted.) *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985). "Once the petitioner has established this failure, the burden of going forward shifts to the parent to show some facially justifiable cause for the failure. * * * The burden of proof, however, remains with the petitioner." *In re A.N.B.*, 12th Dist. Preble No. CA2012-04-006, 2012-Ohio-3880, ¶ 10, citing *In re Adoption of Bovett*, 33 Ohio St.3d 102, 104, 515 N.E.2d 919 (1987).

**{¶ 24}** "While R.C. 3107.07(A) has since been amended to add the 'de minimis contact' language, the burden of proof has remained the same." (Citation omitted.) *J.D.T.,* 2012-Ohio-4537, 978 N.E.2d 602, at ¶ 11. The burden of clear and convincing evidence, "is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 25}** In a recent decision, the Supreme Court of Ohio clarified the standard of review under R.C. 3107.07(A). *See In re Adoption of M.B.,* 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142. In *M.B.*, the Supreme Court of Ohio considered the branch of R.C. 3107.07(A) that pertains to provision of financial support. *Id*. at ¶ 2. However, due to the similar nature of the findings that are required for both prongs of R.C. 3107.07(A), the court's discussion appears to apply to the review of both requirements under R.C. 3107.07(A), i.e., that a parent's consent to adoption is not required if the parent either fails to provide financial support, or fails, without justifiable cause, to provide more than de minimis contact with the child.

**{¶ 26}** In *M.B.*, the Supreme Court of Ohio first noted that probate courts undertake a two-step analysis when applying R.C. 3107.07(A). *Id*. at ¶ 23. The first step involves deciding a factual question – in that case, whether the parent had willfully failed to provide for the support and maintenance of a minor child. *Id.* at ¶ 21. Probate courts have discretion over the factual decision of "whether the biological parent provided support as contemplated by R.C. 3107.07(A) 'and his or her judgment should not be tampered with absent an abuse of discretion.' ". (Citations omitted.) *Id.*

**{¶ 27}** In the second step, if a probate court finds a failure of support, the court then determines "whether justifiable cause for the failure has been proved by clear and convincing evidence." *Id*. at ¶ 23. " '[T]he question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence.' " *Id*. at ¶ 24, quoting *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986), paragraph two of the syllabus.

**{¶ 28}** As we noted, these issues are similar in nature to those involving contact with the minor child. The first consideration is whether the parent has had more than de minimis contact with the child. This is a factual consideration. If the trial court decides that issue adversely to the parent, then the court further considers whether the lack of contact is justifiable.

**{¶ 29}** After applying the above standards, we find no abuse of discretion by the trial court with respect to the issue of whether J.H. had more than de minimis contact with J.R.H. Admittedly, J.H. did not have any in-person contact with J.R.H. for more than a year, nor did she

attempt to have in-person contact. The fact that she dropped gifts off on a few occasions for J.R.H. is not more than "de minimis" contact, and the trial court did not abuse its discretion in concluding that J.H.'s efforts failed to comply with the statute.

{¶ 30} In support of her argument that her efforts constituted more than de minimis contact, J.H. relies on *J.D.T.*, 2012-Ohio-4537, 978 N.E.2d 602. However, the facts in *J.D.T.* are quite different from those in the case before us.

{¶ 31} In *J.D.T.*, the child's father and mother were married and had lived together with the child until the child was four years old. The child knew his father. *Id*. at ¶ 16. After J.D.T.'s father was charged with OVI, the mother no longer allowed him to pick up J.D.T. for visitation. She also told the father not to call his son. *Id*. at ¶ 15. After she told the father not to call, he called every day for three weeks and left messages. *Id.* at ¶ 17. The father then called regularly for the next two months. However, whenever his ex-wife answered the phone, she refused to let him speak with his son. *Id*. The father also sent his son a Christmas letter, and arranged a secret meeting with his son through a friend. *Id.* at ¶ 23. In addition, the father filed a pro se motion, seeking to have his ex-wife held in contempt for failing to allow him court-ordered visitation. *Id.* at ¶ 15.

{¶ 32} The court of appeals noted that the father's contact with his son was minimal, but that his efforts had been thwarted by his ex-wife. *Id*. at ¶ 22. As a result, the court of appeals affirmed the trial court's finding that the lack of consistent contact was justifiable. *Id*. at ¶ 27.

{¶ 33} In contrast, the contacts in the case before us were far less substantial than the contacts in J.D.T., which were nonetheless described as "minimal." Accordingly, the trial court

did not abuse its discretion in concluding that J.H. failed to provide more than de minimis contact. Notably, after seeing J.R.H. on May 26, 2011, J.H. made no further attempt to even call E.H. for several months. In fact, J.H. had no contact at all with the child for more than a year before the adoption petition was filed.

{¶ 34} Based on the preceding discussion, the First Assignment of Error is overruled.


III. Did the Trial Court Err in Failing to Find Justifiable Cause

for the Lack of More Than De Minimis Contact?

{¶ 35} J.H.'s Second Assignment of Error states as follows:

The Court Erred in Not Finding That There Was Justifiable Cause for Lack of More than De Minimis Contact Between the Appellant and the Minor Child.

{¶ 36} Under this assignment of error, J.H. contends, without conceding that her contact was minimal, that any failure was caused by E.H.'s interference. The trial court concluded that E.H. and K.H. did not encourage visitation. However, the court also concluded that J.H. failed to make a good-faith effort to see her child. As was noted, we will not disturb the trial court's determination on this point unless it is against the manifest weight of the evidence. *M.B.,* 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, at ¶ 24.

{¶ 37} In *Holcomb*, the Supreme Court of Ohio stated that "[s]ignificant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *Holcomb*, 18 Ohio St.3d at

361, 481 N.E.2d 613, paragraph three of the syllabus.

{¶ 38} In the case before us, the record indicates that E.H. changed the family's home telephone number at some point after J.H.'s last visit in May 2011. This could be perceived as an attempt to discourage communication. However, E.H. and K.H. continued to reside at the same address where they had lived for many years, and J.H. made no attempt to speak with them directly about visitation. J.H. also failed to call E.H. via cell phone for several months after her last visitation, nor did she text E.H., even though they had previously communicated in that fashion. J.H. also never filed a motion to enforce her visitation rights, even though she knew she could do so. A failure to enforce visitation could be justifiable if the person did not have the financial means to enforce the order. However, the trial court would be in the best position to determine the difficult credibility assessments surrounding this issue. *See, e.g.*, *Adoption of Anthony v. Arick*, 10th Dist. Franklin No. 81AP-907, 1982 WL 4171, *4 (May 13, 1982) (noting that a failure to bring enforcement proceedings could be considered in connection with the credibility of the biological father's testimony concerning his reasons for not visiting his children.)

{¶ 39} In the case before us, the trial court's findings indicate that the court did not find J.H.'s testimony to be credible. As the court noted, J.H.'s sporadic delivery of a gift or card to the house, when no one was apparently home, is not consistent with a good-faith effort to see the child. The trial court's conclusion is supported by clear and convincing evidence, and is not against the manifest weight of the evidence.

{¶ 40} Accordingly, the trial court did not err in concluding that J.H. lacked justifiable cause for failing to provide her child with more than de miminis contact. The Second

Assignment of Error is, therefore, overruled.


IV.   Conclusion

{¶ 41}    All of J.H.'s assignments of error having been overruled, the judgment of the
trial court is affirmed.


. . . . . . . . . . . . .

FAIN, P.J. and HALL, J., concur.


Copies mailed to:

John C.A. Juergens
Patrick J. Conboy, II
Hon. Richard P. Carey