[Cite as *In re N.L.T.*, 2015-Ohio-433.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: N.L.T.

C.A. No.     14CA010567

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     2013AD00039

DECISION AND JOURNAL ENTRY

Dated: February 6, 2015

BELFANCE, Presiding Judge.

{¶1}    Appellant Linda McCune ("Mother") appeals from the judgment of the Lorain County Court of Common Pleas, Probate Division, which overruled Mother's objections to the magistrate's decision and concluded that Mother's consent to the adoption of her biological daughter, N.L.T., was not necessary.  For the reasons set forth below, we affirm.

I.

{¶2}    N.L.T. was born July 28, 2010, to Mother and Todd Young ("Father"), who were not married.  Petitioner-Appellee Natalie Trachsel is Father's aunt and N.L.T.'s great aunt.  Ms. Trachsel obtained temporary custody of N.L.T. in April 2012, and legal custody on June 14, 2012, following Mother and Father's incarceration and failure to comply with their case plans.  Both Mother and Father suffered from substance abuse problems.

{¶3}    On June 25, 2013, Ms. Trachsel filed a petition to adopt N.L.T.  She asserted that neither Mother nor Father's consent was necessary because both parents failed without justifiable

cause for at least a year prior to the filing of the petition to (1) provide more than de minimis contact with N.L.T. and to (2) provide for the maintenance and support of N.L.T. as required by law. Nonetheless, Father consented to the adoption of N.L.T.

{¶4} Prior to the hearing before a magistrate, Mother's counsel filed a motion to transport Mother from prison to the hearing. The trial court subsequently denied the motion. Mother's counsel objected to Mother's absence at the hearing but did not present any witnesses on Mother's behalf. Also, Mother's counsel never sought to try and produce Mother's testimony via alternate means or methods.

{¶5} The magistrate concluded that Ms. Trachsel did not establish by clear and convincing evidence that Mother failed without justifiable cause to provide for the maintenance and support of N.L.T. for the year prior to the filing of the petition but did conclude that the evidence established that Mother failed without justifiable cause to provide more than de minimis contact with N.L.T. for the year prior to the filing of the petition.

{¶6} Mother filed objections to the magistrate's decision, which the trial court thereafter overruled and concluded that Mother's consent to the adoption of N.L.T. was not necessary pursuant to R.C. 3107.07(A). Mother has appealed, raising three assignments of error for our review.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO TRANSPORT MOTHER FOR THE HEARING UPON REQUEST OF HER COUNSEL OR OTHERWISE ORDER MOTHER TO PARTICIPATE BY ALTERNATIVE METHODS.

## ASSIGNMENT OF ERROR II

**MOTHER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL ATTORNEY DID NOT REQUEST ALTERNATIVE METHODS FOR MOTHER'S PARTICIPATION.**

{¶7} Mother asserts in her first assignment of error that the trial court erred in denying her request to transport her from prison to the hearing and erred in failing to order her to participate by alternate means. Mother asserts in her second assignment of error that trial counsel was ineffective in failing to request that Mother participate by alternate means. As these assignments of error are related and were addressed together in Mother's brief, they will be addressed similarly here.

**Failure to Transport**

{¶8} "The United States Supreme Court has determined that parents have a fundamental liberty interest in the care, custody, and management of their children." *In re C.M.,* 9th Dist. Summit Nos. 23606, 23608, 23629, 2007-Ohio-3999, ¶ 14, citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). In the context of permanent custody cases, this Court has stated that "Ohio courts have recognized that parents have a constitutionally protected right to be present at permanent custody hearings, but that this right is not absolute if the parent is incarcerated." *In re C.M.* at ¶ 14. "[I]n evaluating the due process right of an incarcerated parent to be present at a permanent custody hearing, Ohio courts have looked to the test established by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." *In re C.M.* at ¶ 14. Under that test, the incarcerated person's right to be present at the hearing "is determined by balancing: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the governmental burden of additional procedural requirements." *Id.; see also In re Adoption of B.J.M.,* 42 Kan.App.2d 77, 84 (2009) (applying *Mathews* in an

adoption case). "[T]his Court and other appellate districts have specifically held that an incarcerated parent's right to due process is not violated when the parent is represented by counsel at the hearing, a full record of the proceedings is made, and any testimony that the parent may wish to present could be offered by way of deposition." *In re C.M.* at ¶ 24.

{¶9} On appeal, Mother has presented a very limited argument. The record reflects that Mother's counsel was present and participated in the hearing. Mother does not argue that she lacked representation by counsel at the hearing, that a full record of the proceedings was not made, or that the testimony she wished to present could not have been offered by deposition. *See id.* Instead, she appears to assert that there was no order authorizing her deposition to be taken at the prison and that such violated her rights. She has cited no law for this proposition. *See* App.R. 16(A)(7). There is nothing in the record that suggests trial counsel filed a request to take Mother's deposition or to present Mother's testimony via alternate means. Mother's brief appears to acknowledge that trial counsel could have filed a motion seeking to take Mother's deposition, could have requested that Mother appear telephonically, or could have submitted an affidavit in lieu of her appearance. However, trial counsel did not do so. Mother has not cited to any authority for the proposition that the trial court had to order the same in the absence of a motion. *See* App.R. 16(A)(7). Accordingly, it is difficult to discern how the trial court's order denying Mother's motion to be transported for the hearing deprived her of her due process rights given Mother's acknowledgment of the other ways she could have participated in the hearing.

{¶10} In light of Mother's limited argument on appeal, her first assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶11} Mother asserts in her second assignment of error that trial counsel was ineffective in failing to request alternate means for her participation at the hearing. As noted above, parents have a fundamental liberty interest in the care, custody and management of their children. *See In re C.M.,* 2007-Ohio-3999, at ¶ 14. Assuming without deciding that a claim of ineffective assistance of counsel is applicable in a private adoption case, Mother has not met her burden. *See In re Forfeiture of Property of Rhodes,* 2d Dist. Montgomery No. 25464, 2013-Ohio-3046, ¶ 12 (noting that "there can be no separate constitutional right to effective assistance of counsel when the basic right to counsel has not attached[]") (Internal quotations and citation omitted.); *see also In re Adoption of M.C.,* 4th Dist. Jackson Nos. 11CA5, 11CA6, 2011-Ohio-6527, ¶ 8 (noting that the Supreme Court of Ohio has not addressed whether an indigent parent contesting a private party adoption has a procedural due process based right to appointed counsel).

{¶12} The test for ineffective assistance of counsel "requires a demonstration that counsel's performance fell below an objective standard of reasonable representation and that the client has suffered prejudice." *In re C.M.* at ¶ 27. "A deficient performance is one that fell below an objective standard of reasonableness. [Whereas t]o establish prejudice, the [mother] must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different." (Internal quotations and citations omitted.) *In re N.H.,* 9th Dist. Summit No. 24355, 2008-Ohio-6617, ¶ 26. Even assuming that Mother could establish that her counsel's performance was deficient, there is nothing in the record establishing what evidence Mother would present via alternate means nor is there any suggestion that that evidence would establish Mother was justified in failing to have more than de minimis contact with N.L.T. or that she had more than de minimis contact with N.L.T. *See* R.C. 3107.07(A). As the focus of

the hearing was whether Mother's consent was necessary and the trial court determined Mother's lack of contact with N.L.T. was not based upon justifiable reasons, in order to establish prejudice, Mother would necessarily have to show that there was a reasonable possibility that the evidence she would have presented would likely have led to a different outcome. *See In re N.H.,* at ¶ 26. Given the record before us, Mother cannot do so, as it is mere speculation as to what evidence Mother would have presented. *See In re C.M.* at ¶ 31.[1]

{¶13} Further, we note that there was ample evidence in the record of the lack of contact Mother had with N.L.T. and there was evidence that there were occasions for her to have contact with her child. In light of that evidence, and the lack of evidence in the record as to the nature or substance of Mother's testimony, we overrule Mother's second assignment of error.

ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DETERMINED THAT MOTHER'S CONSENT IS NOT NECESSARY FOR HER CHILD TO BE ADOPTED.

{¶14} Mother argues in her third assignment of error that the trial court erred in concluding that Mother's consent was not required for the adoption of N.L.T.

{¶15} R.C. 3107.07(A) provides that a parent's consent to adoption is not required if it is alleged in the adoption petition and the court finds by clear and convincing evidence that:

the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

---

[1] In this respect, we observe that in a direct appeal context it is difficult to advance a prejudice argument without resorting to evidence outside of the record of the proceedings on appeal. However, it is possible that Civ.R. 60(B) could provide a potential remedy in such a case.

R.C. 3107.07(A).[2]  Clear and convincing evidence "requires that the proof * * * produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations and citations omitted.)  *In re Adoption of Holcomb,* 18 Ohio St.3d 361, 368 (1985).

{¶16}  Because R.C. 3107.07(A) is written in the disjunctive, either a failure to have more than de minimis contact or a failure to provide required support for at least the one-year time period is sufficient to obviate the need for a parent's consent.  *See In re Adoption of A.H.,* 9th Dist. Lorain No. 12CA010312, 2013-Ohio-1600, ¶ 9.

{¶17}  The instant appeal only involves whether Mother, without justifiable cause, failed to provide more than de minimis contact with N.L.T. for at least the year prior to June 25, 2013. The probate court's determination that Mother failed to provide more than de minimis contact with N.L.T. is reviewed for an abuse of discretion.  *See In re Adoption of M.B.,* 131 Ohio St.3d 186, 2012-Ohio-236, paragraph two of the syllabus; *see In re Adoption of J.R.H.,* 2d Dist. Clark No. 2013-CA-29, 2013-Ohio-3385, ¶ 25-28 (discussing the application of the standard in *In re Adoption of M.B.* to de minimis contact situations as well as failure to support cases).  Whether justifiable cause has been proven by clear and convincing evidence is a separate issue the determination of which will only be reversed on appeal if it is against the manifest weight of the evidence.  *See In re Adoption of M.B.* at paragraph two of the syllabus; *In re Adoption of J.R.H.* at ¶ 25-28.

---

[2] R.C. 3107.07 was amended effective April 7, 2009.  The prior version of the statute required a finding that the parent failed to "communicate" with the minor child for a period of one year. *See In re J.D.T.,* 7th Dist. Harrison No. 11 HA 10, 2012-Ohio-4537, ¶ 9 (noting that by changing the standard from "communicate," which could imply a single contact, to "more than de minimis contact," which seems to imply more than a single contact, the Legislature indicated its intent to require more effort from the parent to have contact and communication with the child).

{¶18} "[A] party filing a petition for adoption who relies upon R.C. 3107.07(A) bears the burden of establishing by clear and convincing evidence that the exception to the consent requirement contained therein has been satisfied." (Alterations sic.) *In re Adoption of Pushcar,* 110 Ohio St.3d 332, 2006-Ohio-4572, ¶ 13. Mother's argument on appeal appears to be that Ms. Trachsel failed to prove by clear and convincing evidence that Mother's actions with respect to N.L.T. constituted de minimis contact and/or that the amount of contact was not justified under the circumstances.

{¶19} The term "contact" is not defined in the statute; however, the dictionary defines it as, inter alia, "an establishing of communication with someone or an observing or receiving of a significant signal from a person or object." *Merriam-Webster's Collegiate Dictionary* 268 (11th Ed.2005). The question before this Court is whether the trial court erred in concluding Mother's actions did not constitute more than de minimis contact with N.L.T.

{¶20} Ms. Trachsel testified that, after she was made aware that N.L.T. had been taken into the custody of Summit County Children Services, she sought to obtain temporary custody of N.L.T., which she did in April 2012. In June 2012, Ms. Trachsel was granted legal custody of N.L.T. As part of the order granting legal custody, Mother and Father were allowed reasonable visitation with N.L.T. Ms. Trachsel requested only that the visitations be supervised due to Mother and Father's ongoing substance abuse issues.

{¶21} During the one-year period, Mother was in and out of jail and community based correctional facilities. Mother was arrested in June 2012, for the illegal manufacture of methamphetamine. She was in jail until August 14, 2012, whereupon she was released pending sentencing. On August 28, 2012, Mother failed to appear in court and a warrant was issued. Mother was arrested on September 17, 2012, and was in jail until November 28, 2012. From that

date until January 21, 2013, Mother was held in a community based correctional facility, at which point she escaped. Mother was arrested February 3, 2013, and remained in jail until March 31, 2013. Thereafter, Mother was in Oriana House and then a community based correctional facility until August 12, 2013, when she again escaped. When Mother was arrested next, new drug-related charges were filed against her, and Mother ultimately was sentenced to 4.5 years in prison in Marysville.

{¶22} Ms. Trachsel lived in Sheffield Village but traveled to Akron every weekend to help take care of her ailing father. She would always bring N.L.T. with her and testified that Mother could have visited any of the weekends that she was at her father's. During the relevant time period, her father lived with Ms. Trachsel's sister and Father. After Ms. Trachsel's father passed away on February 3, 2013, Ms. Trachsel continued to visit the Akron home to prepare it for use as a rental unit. Ms. Trachsel indicated that Mother never once came to visit N.L.T. at Ms. Trachsel's father's house during the relevant period.

{¶23} Ms. Trachsel's sister (Father's mother) testified that she did not remember Mother coming to her father's home during the period at issue, although Mother did call. However, when Mother would call, she would want to speak to Father and did not ask about seeing N.L.T. Father confirmed that Mother never came to Ms. Trachsel's father's house during the relevant period. Father testified that, sometimes, while Mother was at a community based correctional facility, Mother would call, tell him she was out on a pass, and ask him to meet her somewhere. Father indicated that Mother would ask to do that as opposed to visiting with him and N.L.T. at Ms. Trachsel's father's house. Father stated that Mother could have visited N.L.T. during the time she had passes because the location of Ms. Trachsel's father's house was near the location

where Mother asked Father to meet her. Father even testified that he suggested that they visit with N.L.T. but Mother suggested doing other things.

{¶24} A witness who knew both Ms. Trachsel and Father testified that she saw Mother and Father together at a restaurant in Akron around October or November 2012. It was the witness' understanding that Mother was in a rehabilitation facility at the time and so was surprised to see her at a restaurant drinking what she believed to be an alcoholic beverage. The witness additionally indicated that she would see N.L.T. every weekend at Ms. Trachsel's father's house and during the relevant period she never saw Mother there.

{¶25} Ms. Trachsel's mother testified that Mother knew how to get in contact with her and would see Mother occasionally. Even though they were divorced, Ms. Trachsel's mother visited Ms. Trachsel's father's house approximately twice a month on the weekends while Ms. Trachsel's father was very ill. According to Ms. Trachsel's mother, Mother did not come over while she was there and when she called, she never asked about N.L.T. According to Ms. Trachsel, the last time Mother visited with N.L.T. was March 2012. Ms. Trachsel denied that she ever told anyone that Mother could not visit and stated she did not receive letters that were purportedly sent to N.L.T. by Mother.

{¶26} Nonetheless, Ms. Trachsel testified that Mother "contacted [Ms. Trachsel] and left [her] a handful of messages on [her] cell phone during this period of June 2012 to June 2013. When [Mother] did leave a message, she would ask how [N.L.T.] was. [Ms. Trachsel] would return [Mother's] call to [the community based correctional facility where Mother was staying] and [Ms. Trachsel] would let them know." Mother, however, would never ask to visit N.L.T.

{¶27} In March 2013, Ms. Trachsel attempted to increase contact with Mother. Ms. Trachsel asked Mother to put her on the visitors' list to discuss Mother's interest in maintaining a

relationship with N.L.T. Mother claimed to have put Ms. Trachsel on the list, but, when Ms. Trachsel called to check on whether she was on the list, the jail stated she was not.

{¶28} Mother argues that the phone calls to Ms. Trachsel asking about N.L.T.'s well-being amount to contact with N.L.T. and, because there were multiple instances of Mother calling, there was more than de minimis contact. Mother maintains that, because N.L.T. was only two years old during the relevant time frame, Mother's level of contact was reasonable under the circumstances.

{¶29} In this case, there was no evidence that, during the one-year period, Mother visited with N.L.T., spoke to her, or sent her any gifts, pictures, or letters. Mother argues that N.L.T. was too young to speak to on the phone; however, this fact would go to whether Mother's failure to talk to N.L.T. was justified, not to whether Mother had contact with N.L.T. It is difficult for this Court to conclude that Mother's actions amount to any contact *with* N.L.T. *See In re R.L.H.,* 2d Dist. Montgomery No. 25734, 2013-Ohio-3462, ¶ 15-16 (concluding that, where evidence supported trial court's finding that mother did not "'see, speak with, or correspond with R.L.H.' during the one-year time period[,]" the issue became whether the record established that mother's lack of contact was not justified). Based on the entirety of the record, we cannot say that the trial court abused its discretion in overruling Mother's objection and concluding that Mother failed without justifiable cause to have more than de minimis contact with N.L.T. during the relevant period.

{¶30} Moreover, we cannot say that the trial court's conclusion that Mother's lack of contact was not justifiable was against the manifest weight of the evidence. While there was evidence that, while Mother was in and out of jail and community based correctional facilities during the year, there was also evidence that Mother had passes which allowed to her visit

people in the community, including Father. The record also contains testimony evidencing that Mother chose not to use her passes to visit with N.L.T. Additionally, there was testimony that Mother had the necessary phone numbers to make arrangements to see N.L.T. and that N.L.T. was frequently brought to Ms. Trachsel's father's residence in Summit County where visitation with N.L.T. could have taken place; yet, Mother never called to do so or even to speak with N.L.T.

{¶31} In addressing the prior version of the statute, the Supreme Court has stated that "significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, is required to establish justifiable cause for the non-custodial parent's failure to communicate with the child." *In re Adoption of Holcomb,* 18 Ohio St.3d at 367-368. The record before us does not contain evidence that Ms. Trachsel interfered with any attempts by Mother to make contact with N.L.T.

{¶32} Accordingly, we overrule Mother's third assignment of error.

### III.

{¶33} In light of the foregoing, we overrule Mother's assignments of error and affirm the judgment of the Lorain County Court of Common Pleas, Probate Division.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
CONCURS.

CARR, J.
DISSENTING.

{¶34} The law clearly acknowledges that parents have a constitutional right to be present at a permanent custody proceeding. Even though incarcerated, mother was still guaranteed the due process right to "meaningfully participate" in the adoption hearing below either by being physically transported or at least having her testimony presented in some form, such as by deposition. "[C]ounsel had a duty to protect her (Mother's) rights, and the trial court was responsible for the basic integrity of the proceedings herein." *In re Roque*, 11th Dist. Trumbull No. 2005-T-0138, 2006-Ohio-7007, ¶ 20. Neither was done here. Under these circumstances, Mother's due process rights were violated. I would reverse and remand for a new hearing.

APPEARANCES:

DENISE FERGUSON, Attorney at Law, for Appellant.

SUSAN K. PRITCHARD, Attorney at Law, for Appellee.

TODD YOUNG, pro se, Appellee.