[Cite as *In re Adoption of L.B.R.*, 2019-Ohio-3001.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

|                                      |     |                                       |
| ------------------------------------ | --- | ------------------------------------- |
| IN RE ADOPTION OF: L.B.R. and D.R.-M.R. | :   |                                       |
|                                      | :   |                                       |
|                                      | :   | Appellate Case No. 2019-CA-14         |
|                                      | :   |                                       |
|                                      | :   | Trial Court Case Nos. 20185040 and 20185041 |
|                                      | :   |                                       |
|                                      | :   | (Appeal from Probate Court)           |
|                                      | :   |                                       |
|                                      | :   |                                       |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of July, 2019.

. . . . . . . . . . .

FRANK MATTHEW BATZ, Atty. Reg. No. 0093817, 126 North Philadelphia Street, Dayton, Ohio 45403
 Attorney for Respondent-Appellant

JOHN M. SPENCER, Atty. Reg. No. 0003255, 30 Warder Street, Suite 250, Springfield, Ohio 45504
 Attorney for Petitioner-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Michael H. appeals from a judgment finding that his consent was not required for the adoption of his daughters, L.B.H. and D.R.-M.H.[1]  According to Michael, the trial court's decision was based on insufficient evidence and was also against the manifest weight of the evidence.  Michael further contends that his trial counsel rendered ineffective assistance.

**{¶ 2}** After reviewing the record and applicable legal principles, we find that the judgment was not against the manifest weight of the evidence and, therefore, was also not based on insufficient evidence.  In addition, Michael retained his own counsel in this private adoption proceeding and was not entitled to attack the judgment based on ineffective assistance of counsel.  Even if Michael could assert such a claim, it would be without merit.  Accordingly, the judgment of the trial court will be affirmed.

## I.   Facts and Course of Proceedings

**{¶ 3}** On August 3, 2018, Jason R. filed a petition in the trial court, seeking to adopt L.B.H. and D.R.-M.H., who were born, respectively, in 2008 and 2011.  Jason's wife, Barbara S., was the children's biological mother, and Michael was their biological father.  Barbara and Michael were married in 2010 and were divorced in 2013.  At the time of the divorce, Michael was in prison serving a 24-month sentence for driving under the influence ("DUI").  As a result, the divorce decree awarded custody of the children to Barbara.  Michael was not given visitation rights because he was in prison.  However,

---

[1] These are the children's initials prior to adoption.  We will use these initials even though the caption refers to the initials for the last name the children would have after being adopted.

the decree stated that he could petition the court for visitation once he was released from prison. While Michael was in prison, he did write some letters to his children.

{¶ 4} After Michael was released to a halfway house in March 2014, Barbara met him at a local restaurant and allowed him to see the girls. L.B.H. remembered Michael, but the younger daughter did not. After a few visits, Michael was rearrested and was sent back to prison to finish out his term. Barbara was upset because she had allowed visitation, only to have the children exposed again to the disruption. Michael was then released from prison in July 2014. Michael is a habitual DUI offender, and he has had six DUI convictions.

{¶ 5} After Michael was released in 2014, he did not ask the domestic relations court to establish visitation; in fact, he has never asked the court to order visitation. On several occasions, Barbara worked with Michael to reestablish visitation, but he always violated the boundaries that had been set. Michael had some visits between July 2014 and September 2015, but he had no more visits after September 20, 2015. Between then and when Michael was arrested again in December 2015, he did not ask for visits. The 2015 arrest was for DUI and possession of a large amount of drugs. The minimum mandatory prison term for these alleged crimes was three years, and Michael expected that he would serve five years.

{¶ 6} The case remained pending until Michael was eventually sentenced and went to prison in March 2017. During that fifteen-month time period, Michael did not ask to see his daughters, nor did he file any requests with the court for visitation. He ended up being imprisoned from March 2017 until early February 2018. During this prison term, Michael did not communicate at all with his daughters. In April 2017, Barbara contacted

Michael through an email system for prisoners. During their correspondence, Barbara told Michael that she would not let him see the girls unless there was a court order. Due to Michael's drinking and criminal activity, she wanted visitation to be supervised.

**{¶ 7}** After Michael was released in February 2018, he did not file a request with the domestic relations court for visitation. He also did not contact Barbara until March 26, 2018, when he sent her a text message from a phone number she did not recognize. The text told Barbara to check the child support account and to tell L.B.H. "Happy Birthday." In response, Barbara said that she did not need or want Michael's money, and that the best thing he could do would be to let her husband, Jason, adopt L.B.H., as that is what L.B.H. had requested for her birthday. *See* Plaintiff's Ex. 3 (a collection of text messages).

**{¶ 8}** Between March 26, 2018 and June 18, 2018, Barbara and Michael communicated on four occasions.[2] Only the first text message was initiated by Michael. On May 3, 2018, Barbara contacted Michael because his girlfriend had posted pictures of Barbara's children on social media. Barbara did not want her children shown on social media because Michael was involved in criminal activity and she did not know the persons with whom Michael and his girlfriend associated. Michael did not reply to this text.

**{¶ 9}** On June 8, 2018, Barbara called Michael on the phone due to a conflict concerning a mutual friend. Her intent was to tell Michael that she was not involved and did not want her name being discussed on Facebook. Michael did not ask about the

---

[2] Michael testified that Barbara had called him "millions" of times between March and August 2018, especially if she was mad. Michael said he did not answer because all they were going to do was fight. He had no evidence of this, and the trial court obviously did not believe his testimony. Whether Barbara called him is also irrelevant, as he did not answer.

children, and none of the conversation was about them. Later that night, Barbara texted Michael after receiving a phone call from the mutual friend. He did not reply to the text.

{¶ 10} Their final communication was on June 28, 2018. Once again, Michael's girlfriend had discussed the children on social media, and Barbara sent him a text message to let him know. During this text conversation, Barbara mentioned that she had shown L.B.H. his text on her birthday and had asked L.B.H. if she (Barbara) could send a picture of L.B.H. to Michael. L.B.H. said no. L.B.H. also did not want Michael to have her phone number. Barbara told L.B.H. that she would put Michael's phone number in her phone so she could text him, but L.B.H. said that was not necessary.

{¶ 11} During this text conversation, Barbara also mentioned various changes Michael would need to make for informal visitation; if he did not do so, he would have to file a motion for parenting time. As noted, this was the last contact between the parties, and Michael did not thereafter file any motion to seek parenting time. Jason then filed the petition for adoption on August 3, 2018.

{¶ 12} The evidence also revealed that Michael made a child support payment of $1,000 on March 28, 2018, which was within the one-year period before the petition was filed. Michael made no other support payments during that time, other than minimal amounts of around $5.00, which were taken from his prison pay. He did make payments on September 10, 2018, and on November 13, 2018, after the petition was filed. As of December 19, 2018, his child support arrearage was $13,592.15. This represented the amount of unpaid support between September 16, 2013 and December 19, 2018.

{¶ 13} After hearing the evidence, the trial court filed an entry in January 2019, concluding that Michael's consent was not a prerequisite for the children's adoption

because he had failed without justifiable cause to provide more than de minimis contact with the children for the year preceding the filing of the petition. The court stated that it could not make a similar finding regarding financial support and maintenance of the children during that time period, because Michael was incarcerated for six months of this time, and several months elapsed before he could fully rejoin the workforce. Michael timely appealed from the court's decision.

## II. Sufficiency and Manifest Weight Challenges

{¶ 14} Because Michael's first two assignments of error are interrelated, we will consider them together. These assignments of error are as follows:

The Trial Court's Determination That the Biological Father's Consent Was Unnecessary for the Adoption of the Children Was Based on Insufficient Evidence as a Matter of Law.

The Trial Court's Determination That the Biological Father's Consent Was Unnecessary for the Adoption of the Children Was Against the Manifest Weight of the Evidence.

{¶ 15} Under these assignments of error, Michael contends that he attempted to contact his children on multiple occasions, but that Barbara significantly interfered with and discouraged his attempts. Thus, according to Michael, his lack of contact was based on justifiable cause.

{¶ 16} Before discussing these points, we will review the legal standards for challenges to the sufficiency and manifest weight of the evidence. "A sufficiency of the evidence argument disputes whether the [prevailing party] has presented adequate

evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

> An appellate court's function when reviewing the sufficiency of the evidence
> to support a criminal conviction is to examine the evidence admitted at trial
> to determine whether such evidence, if believed, would convince the
> average mind of the defendant's guilt beyond a reasonable doubt. The
> relevant inquiry is whether, after viewing the evidence in a light most
> favorable to the prosecution, any rational trier of fact could have found the
> essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Jenks* at paragraph two of the syllabus.

{¶ 17} Unlike sufficiency, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. The manifest weight standard of appellate review in *Thompkins* "applies in both civil and criminal cases." *Bayes v. Dornon*, 2015-Ohio-3053, 37 N.E.3d 181, ¶ 46 (2d Dist.), citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17.

{¶ 18} In this situation, a " 'court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and

a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶ 14.

{¶ 19} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a [judgment] is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. As a result, "a determination that a [judgment] is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 20} Furthermore, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). *Accord Buckingham v. Buckingham*, 2018-Ohio-2039, 113 N.E.3d 1061, ¶ 41 (2d Dist.).

{¶ 21} As pertinent here, R.C. 3107.07 provides:

Consent to adoption is not required of any of the following:

(A) A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 22} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of [fact] a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 23} The party who contends that consent is not required has the burden of proof throughout the proceeding. *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236, ¶ 38-39, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), paragraph four of the syllabus. "Even if a parent has completely failed to communicate with his children during the statutory period, his consent to adoption will still be required if there exists justifiable cause for the failure." *Id.* at ¶ 39, citing *Holcomb* at 367. "Typically, a noncustodial parent has justifiable cause for failing

to communicate when the custodial parent significantly interferes with or significantly discourages communication." *Id.*, citing *Holcomb* at 367-368.

**{¶ 24}** "The first consideration is whether the parent has had more than de minimis contact with the child. This is a factual consideration. If the trial court decides that issue adversely to the parent, then the court further considers whether the lack of contact is justifiable." *In re Adoption of J.R.H.*, 2d Dist. Clark No. 2013-CA-29, 2013-Ohio-3385, ¶ 28. We review the court's decision on this initial point for abuse of discretion. *Id.* at ¶ 26-28, citing *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 21.

**{¶ 25}** In the case before us, there is no question that Michael failed to have more than de minimis contact with his children during the relevant time period. He had not seen his children since September 20, 2015, and he asked Barbara only to tell one child "Happy Birthday" on March 28, 2018. Assuming for purposes of argument that this was a "contact," it was less than minimal at best. Furthermore, Michael had contact information for Barbara, including her cell phone number and an email address that she had for six years. Michael also had contact information for Barbara's mother and admitted that he always had access to get hold of Barbara if he wanted.

**{¶ 26}** In addition, Michael did not send the children any birthday or Christmas presents, nor did he send any letters or cards. And, although he was jailed for six months during the pertinent time period, he made no effort to write to the children. In contrast, Michael wrote to them when he was jailed previously. Michael also did not attempt to attend any of the children's sports or dance activities and did not contact their school. Accordingly, we find no abuse of discretion in the court's decision that Michael failed to

have more than de minimis contact with L.B.H. and D.R.-M.H. for more than a year before the adoption petition was filed.

**{¶ 27}** The second consideration is whether the trial court erred in finding that the lack of contact was not justifiable. In this context, we apply a manifest weight standard. *J.R.H.*, 2d Dist. Clark No. 2013-CA-29, 2013-Ohio-3385, at ¶ 36, citing *M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, at ¶ 24.

**{¶ 28}** In *Holcomb*, the Supreme Court of Ohio declined to ascribe a "precise and inflexible meaning to the term 'justifiable cause.' " *Holcomb*, 18 Ohio St.3d at 367, 481 N.E.2d 613. Instead, the court commented that "the better-reasoned approach would be to leave to the probate court as finder of fact the question of whether or not justifiable cause exists." *Id.*, citing *In re Adoption of McDermitt*, 63 Ohio St.2d 301, 408 N.E.2d 680 (1980). This is because "[t]he probate court is in the best position to observe the demeanor of the parties, to assess their credibility, and to determine the accuracy of their testimony." *Id.*

**{¶ 29}** As support for the claim that his failure was excusable due to Barbara's substantial interference, Michael relies on *In re J.D.T.*, 2012-Ohio-4537, 978 N.E.2d 602 (7th Dist.). However, *J.D.T.* involved far different facts than the case before us. For example, after the father in *J.D.T.* was charged with operating a vehicle while intoxicated, the mother no longer allowed him to pick up the children for visitation and told him not to call anymore. *Id.* at ¶ 15. Nothing like that occurred in the case before us. Furthermore, in *J.D.T.*, the father filed a pro se motion for contempt against the mother for failing to provide him with his court-ordered visitation. The filing took place several months before the adoption petition was filed, i.e., it was within the pertinent time period.

*Id.* In contrast, Michael never had a court order for visitation and never asked the domestic relations court for an order.

**{¶ 30}** After being told not to call, the father in *J.D.T.* called his son every day for at least three weeks and left messages each day. He then regularly called for the next two months. However, when the mother answered the phone, she would not let her son speak with his father. *Id.* at ¶ 17. The father also had his parents and sister call to contact his son, but their calls were ignored. *Id.* at ¶ 17 and 19. In addition, about a month before the adoption petition was filed, the father set up a meeting with his son through a friend and met his son on a street corner. On two other occasions, the father met his son by chance, and the son "was excited to see him and greeted him with hugs and kisses." *Id.* at ¶ 17. In the case before us, Michael made one attempt to indirectly contact one of his children.

**{¶ 31}** When the mother in *J.D.T.* found out that the father's parents had allowed him to talk with his son, she refused to let the son visit them anymore. *Id.* at ¶ 18. Furthermore, she let her ex-sister-in-law (the father's sister) visit with the son only if the father and his parents were not around. She also repeatedly told the sister that she would not let the father see his son. *Id.* at ¶ 21.

**{¶ 32}** In view of these facts, the trial court found that the father's lack of contact with his son was justifiable. *Id.* at ¶ 27. The appellate court affirmed the order, noting that whether to believe the mother and her husband or to believe the other witnesses was "a matter of credibility for the trial court to determine." *Id.* at ¶ 22.

**{¶ 33}** In contrast to the events in *J.D.T.*, Michael initiated one communication with Barbara and asked her to convey a birthday message to L.B.H., which Barbara did.

Barbara also offered to send a picture of L.B.H. to Michael and to give him L.B.H.'s phone number; however, L.B.H. refused to let Barbara do so. Additionally, Barbara offered to put Michael's phone number in L.B.H.'s phone, but L.B.H. refused that as well.

**{¶ 34}** Given Michael's many DUIs and criminal activity, Barbara wanted Michael to have court-ordered supervised visitation. Barbara stressed that she feared for her children's safety because the police report for Michael's arrest in 2015 (when he was arrested for DUI and possession of a large amount of drugs) was "very graphic" and "very scary." Transcript of Proceedings ("Tr."), p. 26. Again, Michael made no attempt to apply for visitation, even though he knew he had that right.

**{¶ 35}** We have said that "failure to enforce visitation could be justifiable if the person did not have the financial means to enforce the order." *J.R.H.*, 2d Dist. Clark No. 2013-CA-29, 2013-Ohio-3385, ¶ 28. Lack of financial means was not the issue here, however, as the trial court noted. *See* January 28, 2019 Entry, p. 4. Specifically, the court observed that Michael could have proceeded pro se or could have funded a retainer with the $1,700 his mother was holding for him. *Id.* Rather than choosing to do that, Michael told Barbara that he was saving the money to buy a bank-owned house. Plaintiff's Ex. 3 at p. 22; Tr. at p. 95.

**{¶ 36}** There is no doubt that Barbara's text messages to Michael were harsh at times, as she called him a "dead-beat" and a "loser" and used inappropriate language, particularly in reference to Michael's girlfriend. Ex. 3 at pp. 11-12. Most of these comments were made after Michael's girlfriend posted pictures of the children on social media. While the language was ill-chosen, it had little to do with whether Michael's failure to contact his children was justifiable. Michael even said at trial that he had "no good

excuse" for failing to ask the domestic relations court for visitation.   Tr. at p. 97.

**{¶ 37}** Based on the preceding discussion, this case does not present the exceptional case where the evidence weighs heavily against the judgment.   *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.   As noted, a finding that a judgment is supported by the weight of the evidence also disposes of the sufficiency issue.   *Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, at ¶ 15.

**{¶ 38}** Accordingly, the First and Second Assignments of Error are overruled.


### III.   Ineffective Assistance of Counsel

**{¶ 39}** Michael's Third Assignment of Error states that:

Appellant Was Provided With Ineffective Assistance of Counsel.

**{¶ 40}** Under this assignment of error, Michael contends that his trial counsel rendered ineffective assistance for the following reasons: (1) counsel was unaware that testimony would be given during the January 28, 2019 "pretrial"; (2) Michael was unprepared, as his testimony was rambling and focused on irrelevant information; and (3) trial counsel was unprepared to completely represent Michael.

**{¶ 41}** These arguments are without merit because there is no right to an attorney in civil cases.   As a result, litigants may not attack civil judgments based on ineffective assistance of counsel.   *See Marshall v. Scalf*, 8th Dist. Cuyahoga No. 88708, 2007-Ohio-3667, ¶ 26; *Fidler v. Fidler*, 10th Dist. Franklin No. 08AP-284, 2008-Ohio-4688, ¶ 16.   We have also held that " ' "A complaint of ineffective assistance of counsel is not a proper ground on which to reverse the judgment of a lower court in a civil case that does not result in incarceration * * * when the attorney was employed by a civil litigant." ' "   *D.O.I.T.,*

*L.L.C v. Bd. of Wright Dunbar Technology Academy*, 2d Dist. Montgomery No. 23250, 2011-Ohio-4538, ¶ 5, quoting *Wolford v. Wolford*, 184 Ohio App.3d 363, 2009-Ohio-5459, 920 N.E.2d 1052, ¶ 32 (4th Dist.).   (Other citation omitted.)

{¶ 42} Nonetheless, we have held that "the test for ineffective assistance of counsel in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody."   *In re P.M.*, 179 Ohio App.3d 413, 2008-Ohio-6041, 902 N.E.2d 74, ¶ 15 (2d Dist.), citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.).   *Accord In re J.D.*, 2d Dist. Montgomery No. 26588, 2015-Ohio-4114, ¶ 79, citing *In re S.A.*, 2d Dist. Clark No. 07-CA-110, 2008-Ohio-2225, ¶ 8.

{¶ 43} We have not directly applied ineffective assistance of counsel standards in an adoption case.   However, in a case where a guardian ad litem/counsel had been appointed for an imprisoned father serving a prison term of 20 years to life, we remarked that adoption proceedings "may implicate fundamental liberty interests and basic civil rights," and that the father "was provided with a court-appointed guardian ad litem/counsel * * * precisely because of the nature of the rights implicated."   *In re Adoption of R.C.A.*, 2d Dist. Montgomery No. 19509, 2003-Ohio-607, ¶ 13.[3]   We also commented that neither the father's counsel nor the trial court had assured that he "received a hearing that was

---

[3] The Twelfth District Court of Appeals has said that "the fact that an indigent parent is incarcerated does not automatically require the appointment of counsel in an adoption proceeding."   *In re Adoption of R.M.T.*, 12th Dist. Warren No. CA2016-12-107, 2017-Ohio-8639, ¶ 20, citing *In re Adoption of A.N.B.*, 12th Dist. Preble No. CA2012-12-017, 2013-Ohio-2055.   In *A.N.B.*, the court commented that "[w]hile the appointment of counsel is not a requirement, * * * this does not foreclose appointment in a case where no other procedural safeguard is available and therefore appointment of counsel is necessary to protect a parent's fundamental rights."   *Id.* at ¶ 27, citing *Lassiter v. Dept. of Social Servs. of Durham Cty., N.C.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

fundamentally fair." *Id.* Because the trial court committed plain error by focusing on consent grounds not raised in the adoption petition, we reversed the judgment and remanded the case for further proceedings. *Id.* at ¶ 17.

**{¶ 44}** Other courts have refused to recognize ineffective assistance of counsel claims by biological parents who oppose private adoption petitions. *E.g.*, *In re Adoption of J.L.M-L.*, 5th Dist. Muskingum No. CT2016-0030, 2017-Ohio-61, ¶ 12-13 (noting that the doctrine of ineffective assistance of counsel has not been extended beyond criminal and permanent custody cases).

**{¶ 45}** In an adoption case cited by Michael, the court of appeals did consider an ineffective assistance of counsel claim. *See In re Adoption of Brianna Marie D.*, 6th Dist. Lucas No. L-04-1367, 2005-Ohio-797. However, in that case, the probate court had appointed counsel for the parent whose consent was required. In considering the issue, the Sixth District Court of Appeals did not address whether counsel should have been appointed or whether ineffective assistance of counsel claims are appropriate in adoption cases. Instead, the court simply applied the general standards for ineffective assistance of counsel. *Id.* at ¶ 35. In another case, the Ninth District Court of Appeals considered whether trial counsel was ineffective, by "[a]ssuming without deciding that a claim of ineffective assistance of counsel is applicable in a private adoption case." *In re N.L.T.*, 9th Dist. Lorain No. 14CA010567, 2015-Ohio-433, ¶ 11.

**{¶ 46}** Other courts in Ohio have concluded that there is no equal protection or due process right to appointed counsel for indigent parents in private adoption proceedings. *See In re L.C.C.*, 2018-Ohio-4617, 114 N.E.3d 448, ¶ 30 and 39 (10th Dist.), citing cases from the Fourth, Fifth, and Twelfth District Courts of Appeal. The Supreme Court of Ohio

recently accepted an appeal in a case involving these issues. *See In re Adoption of M.M.F.*, 5th Dist. Delaware No. 18 CAF 09 0069, 2019-Ohio-448, *appeal accepted for review*, 155 Ohio St.3d 1467, 2019-Ohio-2100, 122 N.E.3d 1298.

{¶ 47} The propositions of law raised in the *M.M.F.* appeal are as follows:

By requiring that indigent persons receive appointed counsel when termination of their parental rights is adjudicated in juvenile court, but not when termination of their parental rights by adoption is adjudicated in probate court, the State of Ohio denies adoption respondents equal protection of the laws.

* * *

Denying appointed counsel to an indigent adoption respondent unable to perform relevant and effective cross-examination, produce disinterested witnesses and exhibits, and argue regarding existence and significance of a zero child support order violates due process of law in the circumstances of this case.

Merit Brief of Appellant, E.S., filed in Ohio Sup. Ct. Case No. 2019-0421, pp. 6 and 25.

{¶ 48} Some inconsistency obviously exists among Ohio appellate districts. However, for purposes of this case, we need not resolve these issues because we find no ineffective assistance of counsel.

{¶ 49} We have noted that:

In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d

674. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. *Id.* The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. *Id.* Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. *State v. Cook* (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70.

Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. *State v. Bradley* (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding likely would have been different. *Id.*

*S.A.*, 2d Dist. Clark No. 07-CA-110, 2008-Ohio-2225, at ¶ 9-10.

**{¶ 50}** Michael's initial brief in this case was filed on May 1, 2019. In that brief, he argued that his trial counsel was unaware that testimony would be given during the "pretrial hearing." This argument was based on an affidavit that Michael included with a motion to supplement the record, in which Michael stated that his counsel was unaware that the trial court would be questioning him during the January 28, 2019 "pre-trial hearing," and failed to either prepare him for this questioning or object to it. *See* Father's Affidavit in Opposition of Adoption, ¶ 10-11, filed on April 30, 2019.

**{¶ 51}** We denied the motion to supplement on May 20, 2019. *See* Decision and

Entry *In re Adoption of L.B.R., D.R.-M.R.* (May 20, 2019). Our decision stressed that we " 'cannot add matter to the record * * *, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.' " *Id.* at p. 2, quoting *State v. Ishamail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. We suggested that if the record or transcript were incomplete, Michael could file a motion to remand and/or a motion to supplement or correct the record filed in the trial court. *Id.* at pp. 2-3. However, we stressed that the procedures in App.R. 9 cannot be used to change the record or to include materials that were not part of the trial court record. *Id.* at p.3.

{¶ 52} Michael did not avail himself of these options. Michael's reply brief, which was filed after our decision, does eliminate direct references to his affidavit, but he still indirectly references it. For example, in responding to Jason's claim that Michael's argument about counsel's unawareness was made in bad faith, Michael stated that Jason "fails to consider if Consent Hearing Counsel competently and diligently prepared her client for the Consent Hearing." Michael's Reply Brief, p. 12.

{¶ 53} For purposes of our discussion, we will disregard any content in Michael's affidavit, as it references matters outside the record. After reviewing the record, we find no evidence that his trial counsel's performance was deficient. This action was filed on August 3, 2018. On October 11, 2018, the trial court filed a notice setting a consent hearing on November 19, 2018, and a best interest hearing on December 19, 2018. Michael's retained counsel filed a notice of appearance on November 8, 2018, and also filed a motion to continue the "trial" set for November 19, 2018, because counsel was scheduled to be in another hearing at that time.

{¶ 54} The same day, the court continued the consent hearing until December 21, 2018. Subsequently, on December 21, 2018, the court filed an entry noting that the matter had come on for a pretrial conference that day, and that the court met with the attorneys. During the conference, Michael's attorney said that the issue of the biological father's consent would be contested. As a result, the court's entry stated that, "To that end, and *with the agreement of counsel*, the matter is assigned for hearing to address the need for the biological father's consent to the petitions at bar on January 28, 2019." (Emphasis added.) December 21, 2018 Entry, p.1. Consequently, it is obvious that Michael's attorney knew that testimony would be taken on January 28, 2019.

{¶ 55} Furthermore, a court is specifically permitted to interrogate witnesses "in an impartial manner, whether called by itself or by a party." Evid.R. 614(B). Thus, trial counsel would have known trial courts can ask questions. In the case before us, the trial court asked both Barbara and Michael a few clarifying questions. *See* Tr. at pp. 67-70 (Barbara), and pp, 95-98 (Michael). The law is well-established that trial courts "should not hesitate to pose pertinent and even-handed questions to witnesses." *Brothers. v. Morrone-O'Keefe Dev. Co.*, 10th Dist. Franklin No. 05AP-161, 2006-Ohio-1160, ¶ 11. Moreover, "during a bench trial, a trial court enjoys even greater freedom in questioning witnesses because the court cannot prejudicially influence a jury with its questions or demeanor." *Id. Accord Owais v. Costandinidis*, 2d Dist. Greene No. 2014-CA-5, 2014-Ohio-4103, ¶ 73.

{¶ 56} There is no evidence in the record that the trial court's manner was anything other than impartial. In addition, the court allowed both sides to conduct further examination after its interrogation.

**{¶ 57}** As to Michael's lack of preparation, the record is devoid of evidence that he was unprepared for his testimony. Having reviewed the transcript, we also do not find that Michael's testimony was rambling and focused on irrelevant information. Finally, the record contains no evidence that trial counsel was unprepared for the hearing. This was a simple case, with only two witnesses. With the facts as they were, there was only so much Michael's counsel could do. Accordingly, the Third Assignment of Error is overruled.

## IV. Conclusion

**{¶ 58}** All of Michael's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Frank Matthew Batz
John M. Spencer
Hon. Richard P. Carey